**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jun 27 2012, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CORY A. HEINZMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1012-CR-1327 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT NO. 2
The Honorable Daniel Pfleging, Judge
Cause Nos. 29D02-0511-FC-239, 29D02-0805-FC-46

**June 27, 2012**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Cory Heinzman ("Heinzman") was convicted in Hamilton Superior Court of three counts of Class C felony child molesting in one cause and pleaded guilty to one count of Class D felony sexual battery in another cause. The trial court imposed an aggregate sentence of twenty-four years. In this consolidated appeal, Heinzman presents five issues, which we restate as:

I.     Whether the trial court erred in denying Heinzman's motion for discharge;

II.    Whether the trial court abused its discretion in admitting testimony which Heinzman claims vouched for the credibility of the victim;

III.   Whether the trial court abused its discretion in admitting into evidence a letter written by the victim, which Heinzman claims constituted impermissible hearsay;

IV.    Whether Heinzman's convictions for three counts of Class C felony child molesting constitute double jeopardy; and

V.     Whether the trial court erred in sentencing Heinzman to an aggregate term of twenty-four years incarceration.

We affirm.

**Facts and Procedural History**

In 2002 and 2003, Z.B. lived in Elwood, Indiana with his father and stepmother. Z.B. was born in 1992, and was ten and eleven years old at the time. Z.B. was experiencing emotional problems due in part to his parents' recent separation and divorce. Heinzman, who was born in born in 1969, was a cousin of Z.B.'s father and worked as a case manager with the Hamilton County Department of Child Services ("DCS"). Z.B.'s stepmother asked Heinzman to mentor Z.B. and help him adjust to his current situation. Heinzman agreed and took Z.B. on several outings, such as going to the cinema, shopping, going out to eat, and watching movies at Heinzman's house in Hamilton

2

County. Z.B. also began to spend the night at Heinzman's home up to four times per month. Z.B. typically slept in the same bed with Heinzman.

On several occasions when Z.B. and Heinzman were in the bed, Heinzman put his hands inside Z.B.'s pants and fondled the boy's penis for approximately ten to twenty minutes. Although Z.B. was unsure of the exact number of times this occurred, he later testified that this occurred "more than twice." Tr. pp. 306-07. During another occasion, Heinzman and Z.B. were watching television on the couch, with Z.B.'s legs sitting across Heinzman's lap. Although Z.B.'s father was also in the room, Heinzman and Z.B. were under a blanket, and Heinzman again fondled Z.B.'s penis. All of these events occurred before Z.B. moved in with his mother in November 2003.

In October 2005, Z.B. had moved back in with his father. Also at the home was Z.B.'s brother E.B., who is one year younger than Z.B. On October 24, 2005, Z.B. and E.B. got into a fight. After this, Z.B. threatened to kill himself and attempted to do so by wrapping a cord around his neck. Z.B.'s family admitted him to the hospital for counseling. At this time, Z.B. disclosed to his stepmother and a hospital counselor that Heinzman had molested him.

Z.B.'s family informed both the Hamilton County Sheriff's Department and the Department of Child Services of Z.B.'s accusations. After a Sheriff's Deputy took an initial report at Z.B.'s home, Detective Kija Ireland ("Detective Ireland") of the Hamilton County Sheriff's Department contacted Z.B.'s family to schedule an interview with Z.B. at a child advocacy center in Hamilton County. Rita Johnson ("Johnson"), a "facilitator" at the child advocacy center interviewed Z.B. by herself. Detective Ireland, a deputy

3

prosecutor, and Felicia Boyd-Smith ("Boyd-Smith"), a supervisor for the Marion County DCS,[1] observed Johnson's interview with Z.B. from another room via a video feed. Boyd-Smith also conducted her own investigation of the report of possible sexual abuse by Heinzman. In addition to observing Z.B.'s interview at the child advocacy center, Boyd-Smith spoke with Z.B.'s parents. She then determined that the report of abuse was "substantiated." Tr. pp. 238, 241.

On November 1, 2005, the State charged Heinzman with three counts of Class C felony child molesting in cause number 29D02-0511-FC-239 ("Cause FC-239"), with all three counts alleging that Heinzman had molested Z.B. by fondling. On May 1, 2008, the State charged Heinzman with Class C felony child molesting in cause number 29D02-0805-FC-46 ("Cause FC-46"). This latter charge alleged that, between 2003 and 2004, Heinzman had also fondled Z.B.'s brother E.B. by placing his hands on E.B.'s penis.

After numerous delays, some caused by Heinzman's motions to continue and others caused by the trial court resetting the trial date as a result of court congestion, Heinzman, on April 22, 2010, filed a motion for discharge pursuant to Indiana Criminal Rule 4(C). After a hearing was held on the matter, the trial court denied this motion on September 16, 2010.

Heinzman's jury trial in Cause FC-239 was held on October 4 to October 6, 2010. At the conclusion of the trial, the jury found Heinzman guilty as charged. On October 7, 2010, Heinzman agreed to plead guilty to Class D felony sexual battery in Cause FC-46

---

[1] Boyd-Smith, a supervisor for the Marion County DCS, was asked to investigate the report involving Heinzman in Hamilton County because Heinzman himself was an employee of the Hamilton County DCS. Tr. p. 236.

in exchange for the State dismissing the charge of Class C felony child molesting. The trial court accepted the plea and scheduled a joint sentencing hearing in both causes for November 12, 2010.

At the sentencing hearing, Heinzman sought to withdraw his plea in Cause FC-46. The trial court denied this request. The trial court then found as aggravating factors in Cause FC-239 that Heinzman's crimes were statutorily crimes of violence; that Heinzman engaged in a pattern of criminal conduct; and that Heinzman had abused a position of trust. The trial court found as mitigating that, at the time of the commission of the crimes, Heinzman had no prior criminal history. The trial court then sentenced Heinzman to the maximum term of eight years on each count and ordered the sentences to be served consecutively, for an aggregate sentence of twenty-four years. In Cause FC-46, the trial court sentenced Heinzman to a concurrent term of three years. Although the plea agreement called for this sentence to be suspended, the trial court's oral sentencing statement indicated that this sentence was to be executed. Heinzman now appeals.

### I. Motion for Discharge

Heinzman first claims that the trial court erred in denying his motion for discharge. Heinzman claims that he was entitled to discharge under Indiana Criminal Rule 4(C) in addition to the Sixth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution. We address each argument in turn.

A. *Criminal Rule 4(C)*

Indiana Criminal Rule 4(C) provides in relevant part:

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar.

As noted by this court in Upshaw v. State, 934 N.E.2d 178, 181-82 (Ind. Ct. App. 2010), trans. denied, and Feuston v. State, 953 N.E.2d 545, 548 (Ind. Ct. App. 2011), there appears to be a disagreement about the proper standard of review to apply to appeals of a trial court's ruling on a motion for discharge brought under Criminal Rule 4. Some cases have applied a *de novo* standard, others an abuse of discretion standard, and yet others a clearly erroneous standard. See Upshaw, 934 N.E.2d at 181-82 (collecting cases). Although Upshaw did not resolve this apparent conflict, Feuston attributed the discrepancies to the fact that in some cases the trial court resolved disputed facts, whereas in other cases the court simply applied the law to undisputed facts. Feuston, 953 N.E.2d at 548. Therefore, Feuston concluded that "factual findings made by the trial court are entitled to deference, but legal conclusions are to be reviewed *de novo*." Id.

Here, Heinzman was arrested on November 1, 2005, and the trial court set an initial trial date of April 25, 2006. Heinzman filed a motion for a continuance on April 20, 2006. The trial court granted Heinzman's motion and set a trial date of October 31, 2006. Heinzman argues, and the State does not deny, that the 170-day delay between his arrest and his motion to continue is attributable to the State and counts against the one-year time period the State had to bring him to trial. On October 18, 2006, just two weeks before his scheduled trial, Heinzman filed another motion to continue. The trial court

6

granted this motion and set a trial date of April 24, 2007. This delay is clearly attributable to Heinzman.

On April 24, 2007, and again on June 13, 2007, the trial court made docket entries indicating that, due to court congestion, the court was rescheduling Heinzman's trial, and Heinzman's trial was ultimately reset to October 16, 2007. Then, on October 16, 2007, the trial court made another docket entry indicating that, due to court congestion, Heinzman's trial was reset for December 11, 2007. On December 11, 2007, the trial court yet again made another docket entry indicating that, due to court congestion, Heinzman's trial was reset to April 22, 2008. However, there is no CCS entry for April 22, 2008. The next entry on the CCS occurred on May 23, 2008, in which the trial court, in an apparent *nunc pro tunc* entry, noted that, due to another in-progress jury trial, Heinzman's scheduled trial date of April 22, 2008 had been vacated and reset for July 15, 2008. Yet again, there is no entry in the CCS for July 15, 2008. Instead, the next entry was made on October 15, 2008, which simply noted that the trial set for July 15, 2008 was reset to January 27, 2009. This entry is followed by another dated November 5, 2008, which explains in more detail that the jury trial set for July 15, 2008 was vacated due to a trial in progress in another case and reset for January 27, 2009.

On appeal, Heinzman claims that, even if all the other delays were not chargeable to the State, the 196-day delay between July 15, 2008 and January 27, 2009 is attributable to the State because the trial court did not properly document the court congestion and because, Heinzman insists, the court's findings of congestion were factually incorrect. Heinzman contends that when this 196-day delay is added to the earlier 170-day delay

7

attributable to the State, "the total delay attributable to the State is at least 366 days[.]" Appellant's Br. p. 23. In other words, according to Heinzman, "the one-year deadline for bringing [him] to trial expired January 26, 2009[.]" Id.

But even if we assume *arguendo* that Heinzman's claims regarding the delay attributable to the State is correct, Heinzman cannot prevail. According to Heinzman, the deadline for bringing him to trial was January 26, 2009. See id. But on October 15, 2008—a date still within the one-year period claimed by Heinzman—the trial court reset the trial date to January 27, 2009—a date one day beyond the one-year period.

It is well-settled that "when a trial court, acting within the one-year time limit of Criminal Rule 4(C), schedules trial to begin beyond the one-year limit, the defendant must make a timely objection to the trial date or waive his right to a speedy trial under that rule." State ex rel. Bramley v. Tipton Circuit Court, 835 N.E.2d 479, 481 (Ind. 2005) (citing Vermillion v. State, 719 N.E.2d 1201, 1204 (Ind. 1999)). Here, because Heinzman failed to object when the trial court reset the trial for a date beyond the one-year limit, he waived his right to a speedy trial under Criminal Rule 4(C). See Baumgartner v. State, 891 N.E.2d 1131, 1135 (Ind. Ct. App. 2008) (concluding that defendant waived his Criminal Rule 4(C) claim where he failed to object when the trial court, acting within the one-year time limit, reset the trial for a date outside the one-year time period).[2]

---

[2] We reject Heinzman's claim that he did not waive this issue by failing to object because "he had no reason to suspect the trial court's finding of congestion was inaccurate factually." Appellant's Br. p. 23. Heinzman is attempting to have it both ways. He attacks the trial court's findings of congestion as factually inaccurate, yet attempts to rely on these findings to avoid waiver. Moreover, Heinzman fails to

B. *Constitutional Right to Speedy Trial*

Heinzman also claims that the delay in bringing him to trial deprived him of his constitutional right to a speedy trial. The right of an accused to a speedy trial is guaranteed by both the Sixth Amendment to the United States Constitution and by Article 1, Section 12 of the Indiana Constitution. Fisher v. State, 933 N.E.2d 526, 530 (Ind. Ct. App. 2010) (citing Clark v. State, 659 N.E.2d 548 (Ind. 1995)).

The question of whether a defendant has been denied the right to a speedy trial under the Sixth Amendment involves the balancing of a number of factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) any resulting prejudice to the defendant. Fisher, 933 N.E.2d at 530; Danks v. State, 733 N.E.2d 474 (Ind. Ct. App. 2000) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)), trans. denied. We employ the same test to evaluate a speedy trial claim under Article 1, Section 12 of the Indiana Constitution. Fisher, 933 N.E.2d at 530.

We acknowledge that it took nearly five years to bring Heinzman to trial. "A post-accusation delay exceeding one year has been termed 'presumptively prejudicial' to a defendant." Danks, 733 N.E.2d at 481. However, this "'does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry.'" Id. (quoting Doggett v. United States, 505 U.S. 647, 652 n.1 (1992)). Thus, even if the delay is presumptively prejudicial because it exceeded one year, a defendant must "specify precisely how the

_____

explain why he was unable to discover that the trial court's congestion finding was allegedly inaccurate at the time he should have objected.

9

delay affected his ability to defend himself against the charges in order to succeed on a speedy trial claim." Id. (citing Gilmore v. State, 655 N.E.2d 1225, 1227-28 (Ind. 1995)). This is a burden Heinzman fails to meet. Heinzman claims that Z.B. and other witnesses could not recall certain events, but he fails to explain how he was specifically prejudiced by these witnesses' inability to recall.

Moreover, we disagree with Heinzman's characterization of his assertion of his right to a speedy trial as "vigorous." See Appellant's Br. p. 27. Heinzman filed several motions to continue and did not object when the trial court repeatedly reset his trial as a result of court congestion. In fact, Heinzman did not file his motion to discharge until April 22, 2010, which was almost four and one-half years after he was initially charged. Even after his motion for discharge was denied, Heinzman sought, unsuccessfully, to further continue his trial date. Under these particular facts and circumstances, we cannot say that Heinzman was denied his constitutional right to a speedy trial.

## II. Vouching Testimony

Heinzman next contends that the trial court abused its discretion when it admitted the testimony of DCS supervisor Boyd-Smith, who investigated Z.B.'s reports of molestation by Heinzman. The admission of evidence is within the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. Boatner v. State, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010). The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Id.

Indiana Evidence Rule 704(b) provides, "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Such testimony invades the province of the jury in determining what weight it should place upon a witness's testimony. Rose v. State, 846 N.E.2d 363, 367 (Ind. Ct. App. 2006).

In the present case, Heinzman focuses his argument on the testimony of DCS investigator Boyd-Smith, who testified that she investigated a report that Heinzman had inappropriately touched Z.B. The State asked Boyd-Smith if she determined whether she had "substantiated" the alleged touching. Heinzman then objected on grounds that such testimony was an inadmissible opinion as to whether Heinzman was guilty and improperly vouched for Z.B.'s truthfulness. The trial court overruled Heinzman's objection, and the following exchange took place between the prosecuting attorney and Boyd-Smith:

> Q. Ms. Smith, was the report, is there a process for substantiating or unsubstantiating at this point in time when you are beginning the investigation of this type of allegation?
> A. At the conclusion, yes, at the conclusion of an investigation there's a case finding.
> Q. Okay. And can you tell us what you mean by a case finding?
> A. At th[e] time that this was investigated I believe we had three options. You could substantiate, you could unsubstantiate. Substantiate means basically find the allegations to be true. Unsubstantiated [means] that they're not true or unfounded. Or I believe we still had indicated at that time. So –

Tr. pp. 238-39. At this point, Heinzman objected and moved to strike. The trial court

sustained the objection and granted the motion to strike the statement that the allegations

were true. The trial court also instructed the jury to disregard the statement as follows:

> Ladies and Gentlemen of the Jury, you're admonished to disregard that statement. I believe the follow[] up question that's going to be handled by [the prosecuting attorney] will explain what she meant by that, *but you are not to take the statement that she made that the allegations are true as evidence*. It is stricken from the record.

Tr. pp. 239-40 (emphasis added).

The prosecuting attorney then continued with her direct examination of Boyd-

Smith:

> Q.  Would it be a proper statement to say that when you substantiate a case you find a reason to believe the allegations may have some factual foundation?
>
> A.  Yes, that would be correct.
>
> Q.  So there's no way for you to tell or to say whether or not at that point in time that they are absolutely beyond doubt true, but they have a foundation upon which to proceed with further investigation?
>
> A.  That's correct.
>
> Q.  Okay. And if you had unsubstantiated it, then there would have been no basis for further investigation as far as your department was concerned; is that correct?
>
> A.  That's correct.
>
> Q.  Okay. And what does indicated, I know we don't have indicated here, but what is that term? What does that mean?
>
> A.  Indicated at that time meant that there was a high likelihood, if you will, which is kind of hard to define[,] that the allegations did occur.
>
> Q.  So is it fair to say that indicated might, everybody might be kind of scratching their heads and say we think there may be something here but we need to kind of delve into some additional things?
>
> A.  Yes, that would be correct.
>
> Q.  Okay. So this particular report at the time after the initial interview and the investigation that you did was substantiated, correct?
>
> A.  That's correct.

12

Q. And then what, if any, additional involvement with this particular case did you continue to have after that point in time?

A. None at that point in time.

Tr. pp. 240-41.

On appeal, Heinzman claims that Boyd-Smith's references to "substantiating" the allegations in her report were impermissible pursuant to Evidence Rule 704(b). In support of his argument, Heinzman relies mainly on the opinion of this court in Bradford v. State, 960 N.E.2d 871 (Ind. Ct. App. 2012). In that case, a child protective services investigator testified that she had "substantiated sexual abuse, meaning our office feels that there was enough evidence to conclude that sexual abuse occurred." Id. at 876. We concluded that although the investigator's testimony did not directly vouch for the truthfulness of the victim's testimony, it did constitute an opinion regarding the truth of the allegations, because she testified that she had interviewed the victim and others and concluded that the victim had, in fact, been sexually abused. Id. at 876-77. We therefore concluded that this evidence was inadmissible and that the trial court's decision to admit this evidence constituted reversible error. Id. at 877-78.

Heinzman claims that the same is true here, i.e. that Boyd-Smith's references to "substantiating" the claims of abuse amounts to testimony that she believed the allegations to be true. We disagree. Boyd-Smith's testimony revealed that when a report is "substantiated," it means that the DCS had a "reason to believe" that the report of inappropriate touching "may have some factual foundation," but that this did not mean that the allegations were "absolutely" true. Tr. pp. 239-41. Instead, she explained that this simply meant that the allegations had a foundation upon which to proceed with

13

further investigation, whereas an unsubstantiated report meant that there was no basis for further investigation. She also explained that the report involving Z.B. and Heinzman was "substantiated," i.e., that there was a factual foundation for further investigation.

Thus, Boyd-Smith's testimony revealed little more than that the investigation proceeded further. We agree with the State that this information added little, if anything, to what the jury was already well aware of: that an investigation was conducted that revealed enough evidence to further investigate, and ultimately charge Heinzman with child molesting. In fact, Heinzman's trial counsel made this very point during his cross-examination of Boyd-Smith, emphasizing that the likelihood or "high likelihood" was akin to probable cause, and "certainly not beyond a reasonable doubt." Tr. p. 244.

We find this case to be factually distinguishable from Bradford in that the witness in that case testified to the effect that "there was enough evidence to conclude that sexual abuse occurred," and that she concluded that the victim had, in fact, been sexually abused. 960 N.E. at 876-77. In contrast, here, Boyd-Smith testified that there was a factual basis to support further investigation. She did not testify to an opinion concerning guilt or innocence, the truth or falsity of allegations, or whether a witness had testified truthfully. In fact, the trial court specifically admonished the jury that Boyd-Smith's earlier testimony was *not* to be considered as an opinion concerning the truth of the allegations. We do not read Bradford to broadly hold that any testimony that a report of abuse was "substantiated" constitutes impermissible vouching and reversible error.

We also find Rose, supra, cited by Heinzman, to be factually distinguishable. In that case, the State's witness testified repeatedly regarding the child victim's credibility

14

and how "convincing" the victim was when she described the offense. Rose, 846 N.E.2d at 368-69. We held this to be impermissible vouching. Id. In the case before us, Boyd-Smith did not testify regarding Z.B.'s credibility or repeatedly state how convincing his allegations were. Gutierrez v. State, 961 N.E.2d 1030 (Ind. Ct. App. 2012), also cited by Heinzman, is even more factually distinct. In that case, a nurse testified that she believed that the child victim was telling the truth, a DCS investigator testified that she "absolutely" believed the victim's testimony, and the deputy prosecutor contemporaneously inserted his opinion that he too believed the victim. Id. at 1035. Boyd-Smith's testimony does not approach this sort of vouching.

For all of these reasons, and under the facts and circumstances before us, we cannot conclude that the trial court abused its discretion in overruling Heinzman's objection to Boyd-Smith's testimony.

### III. Hearsay Evidence

Heinzman also claims that the trial court abused its discretion in admitting into evidence a letter that Z.B. had written, but apparently never delivered to, Heinzman. Heinzman claims that this letter constituted impermissible hearsay. In addressing this claim, we first note that we review the trial court's evidentiary decisions only for an abuse of discretion. Boatner, 934 N.E.2d at 186.

The letter in question reads:

Cory I don't see why you would do something so disturbing to me after I trusted you for so long and I respeced [sic] you but now I have no respect no trust and right now I don't give a damn about you[.] I hope you spend the rest of your life in jail and after that the rest of eternity in hell[.] At first it was something new to me[.] I didn't now [sic] what was going on and

15

thought it feelt [sic] good but when I found out it was wrong and didn't like it then you forsed [sic] me to do that which was wrong that you took control of me after I told you to stop doing that because I didn't like it but you would not stop[.] Then you woke me up doing that and know [sic] when I think about it hurt's [sic] me so bad and depresed [sic] about it one time I wanted to kill myself over all this stuff and if I ever see you agin [sic] I don't know if I could control myself.

Ex. Vol., State's Ex. 8.

Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. Boatner, 934 N.E.2d at 186 (citing Ind. Evidence Rule 801(c)). As a general rule, hearsay evidence is inadmissible. Id. (citing Ind. Evidence Rule 802). There are several exceptions to this general rule. Pursuant to Indiana Evidence Rule 803(3), a statement of a then existing mental, emotional, or physical condition is not excluded by the hearsay rule, even though the declarant is available as a witness. Specifically:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it related to the execution, revocation, identification, or terms of declarant's will.

Evid. R. 803(3).

Here, the bulk of Z.B.'s letter consists of a statement of his then-existing state of mind and emotions. It speaks of how he had no respect for Heinzman, felt betrayed, and how hurt he was by Heinzman's actions. Z.B. even testified with regard to the letter that "those are my feelings and how I felt *at the time*." Tr. p. 323 (emphasis added). To the extent that the letter describes Z.B.'s then-existing state of mind and emotions, it was admissible pursuant to Evidence Rule 803(3).

16

Heinzman argues, however, that this exception is inapplicable because the letter was offered "to prove the fact remembered," i.e. that Heinzman molested Z.B. We agree that there are certain, indirect references to Heinzman's actions toward Z.B. But to the extent that the letter contains references to these actions, we cannot say that Heinzman was harmed by the admission of these references. Z.B. testified clearly and directly regarding Heinzman's acts of molestation. The few indirect references to the molestation contained in the letter are relatively innocuous by comparison and are, at most, cumulative of Z.B.'s direct testimony. We therefore conclude that, to the extent that portions of the letter were inadmissible, any error in the admission of the letter was harmless. See Montgomery v. State, 694 N.E.2d 1137, 1140 (Ind. 1998) (noting that the admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence admitted); Purvis v. State, 829 N.E.2d 572, 585 (Ind. Ct. App. 2005) (erroneous admission of evidence is harmless if it is cumulative of other evidence), trans. denied.

### IV. Double Jeopardy

Heinzman also contends that his convictions for three counts of Class C felony child molesting constitute double jeopardy. The standard for evaluating an alleged double jeopardy violation is well-settled. In Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999), our supreme court established a two-part test for analyzing double jeopardy claims under the Indiana Constitution and concluded that two or more offenses are the "same offense" for double jeopardy purposes "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of

one challenged offense also establish the essential elements of another challenged offense." Thus, a double jeopardy violation may occur if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts. Williams v. State, 892 N.E.2d 666, 668-69 (Ind. Ct. App. 2008). To establish a violation of the actual evidence test, the defendant must demonstrate a "reasonable possibility" that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. Id.

Here, Heinzman notes that all three counts of child molesting were alleged in the same manner:

[O]n or between January 1, 2002 and November 30, 2003, Cory Heinzman did, with a child under the age of fourteen (14), to-wit: [Z.B.], age 10-12 years of age, perform or submit to touching or fondling of the child with the intent to arouse or satisfy the sexual desire of the child or the older person.

Appellant's App. p. 17.

In addition to the lack of specificity in the charging information, Heinzman notes that, during deliberations, the jury asked the trial court, "Must one of the three counts be the incident on the couch?" Appellant's Supp. App. p. 1. The trial court responded by telling the jury to review their instructions and notes. Id. Heinzman admits that Z.B. testified that Heinzman fondled him once on a couch in the living room and "more than twice" in Heinzman's bedroom. But he claims that the lack of specificity in the charging information combined with the jury's question and Z.B.'s testimony create a reasonable

possibility that the jury returned guilty verdicts on all three counts based solely on the evidence of the acts that occurred in the bedroom.

We note, however, that the State presented evidence that Heinzman repeatedly molested Z.B. from September 2002 through November 2003. Z.B. testified that he spent the night at Heinzman's house once or twice per month during this period. Although Z.B. was unsure of precisely how many times Heinzman fondled him when they were in the bedroom, he stated that it occurred "more than twice." Tr. pp. 306-07. By definition more than twice is at least three times. From this alone, the jury could have concluded that Heinzman molested Z.B. three separate times in the bedroom. In fact, the prosecuting attorney emphasized this point in its closing argument to the jury, stating, "even if you have difficulty believing [the living room] incident, you have sufficient information before you that there were numerous incidents of molestation that happened in the bedroom to satisfy the three counts that are charged." Tr. p. 466. Moreover, Z.B. also testified that Heinzman molested him on the couch. Thus, there was evidence of at least four separate acts of molestation by Heinzman. Accordingly, we cannot say that there was a reasonable possibility that the jury relied on the same evidentiary facts to convict Heinzman of the three separate counts of child molesting.

## V. Sentencing

Heinzman also asserts several errors in the manner in which the trial court sentenced him: that the trial court violated his <u>Blakely</u> rights by finding certain aggravating factors, that the trial court abused its discretion in the finding of aggravating

19

and mitigating factors, and that his sentence is inappropriate in light of the nature of the offense and the character of the offender. We address each of these arguments in turn.

A. *Blakely*

Heinzman committed his offenses in 2002 and 2003, when the presumptive sentencing scheme was still in effect, and the presumptive sentencing statutes are therefore applicable to Heinzman's sentence. See Harris v. State, 897 N.E.2d 927, 928-29 (Ind. 2008) ("The sentencing statute in effect at the time a crime is committed governs the sentence for that crime."). Heinzman was convicted of three counts of Class C felony child molesting. At the time of Heinzman's offenses, the presumptive sentence for a Class C felony was four years, and the trial court could add up to an additional four years based on the presence of aggravating factors. See Ind. Code § 35-50-2-5 (1998). The trial court imposed the maximum sentence of eight years on each count.

Heinzman argues that the trial court's finding of aggravating factors violated his rights under the Sixth Amendment to the United States Constitution as interpreted in Blakely v. Washington, 542 U.S. 296 (2004), and as applied to Indiana's sentencing statutes by the Indiana Supreme Court in Smylie v. State, 823 N.E.2d 679 (Ind. 2005). See Williams v. State, 891 N.E.2d 621, 631 (Ind. Ct. App. 2008) (explaining that, under Blakely, a sentence may only be enhanced based on: (1) prior convictions, (2) facts found by a jury beyond a reasonable doubt, (3) facts admitted by the defendant, or (4) facts found by the court if the defendant has consented to judicial fact-finding).

The State counters that Heinzman waived this claim by not raising it before the trial court. A claim is generally considered forfeited if it is not raised at trial. See Smylie,

20

823 N.E.2d at 689. In <u>Smylie</u>, however, our supreme court held that the State's waiver argument failed because the defendant's trial counsel could not have anticipated the holding of <u>Blakely</u> beforehand. <u>Id</u>. Here, however, Heinzman's sentencing hearing took place in 2010, almost six years after the <u>Blakely</u> decision and five years after the <u>Smylie</u> decision. We therefore agree with the State that Heinzman waived his current argument by failing to make any <u>Blakely</u> objection to the trial court.

B. *Abuse of Discretion*

In <u>Kien v. State</u>, 782 N.E.2d 398 (Ind. Ct. App. 2003), a case decided under the presumptive sentencing scheme in effect at the time of Heinzman's convictions, we explained:

> Sentencing lies within the discretion of the trial court. Sentencing decisions are reviewed only for an abuse of discretion. When a trial court enhances a sentence, the trial court is required to state its specific reasons for doing so. The sentencing statement must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is aggravating or mitigating; and (3) demonstrate that the aggravating and mitigating circumstances have been weighed to determine that the aggravators outweigh the mitigators. We examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained the reasons for the sentence. A sentence enhancement will be affirmed in spite of a trial court's failure to specifically articulate its reasons if the record indicates that the court engaged in the evaluative processes and the sentence imposed is not [inappropriate[3]].
>
> A single aggravating circumstance may be sufficient to enhance a sentence. A sentence enhancement may still be upheld when a trial court improperly applies an aggravator but other valid aggravators exist.

---

[3] The case cited by <u>Kien</u> referred to a "manifestly unreasonable" sentence. But as noted in <u>Kien</u>, Appellate Rule 7(B) was amended effective January 1, 2003, to refer to an "inappropriate" sentence. 782 N.E.2d at 416 n.12. Because this rule is directed toward the reviewing court, we refer to the current version of the rule. <u>See id</u>.

Id. at 410-11 (citations omitted).

Heinzman claims that the trial court improperly found as an aggravating factor that Heinzman engaged in a pattern of criminal conduct. Heinzman contends that the evidence shows that he engaged in, at most, only one instance of criminal conduct. We disagree. As noted above in our double jeopardy analysis, there was evidence in the record that Heinzman molested Z.B. on at least three occasions in the bedroom and once on the couch.

We acknowledge that the trial court found as mitigating that, at the time the current offenses were committed, Heinzman did not yet have a criminal history. But this fact does not rule out the possibility that the trial court's reference to a pattern of criminal conduct could also have been in reference to Heinzman's other convictions for crimes that were charged after the charges in this case were filed, but for which Heinzman was convicted and sentenced prior to his convictions and sentencing in the present case. Specifically, Heinzman was convicted in 2007 for three counts of Class A felony child molesting, two counts of Class C felony child molesting, two counts of Class D felony sexual misconduct with a minor, and one count of Class D felony conducting a performance before minors that is harmful to minors. Appellant's App. pp. 275-76; see also Heinzman v. State, 895 N.E.2d 716, 719 (Ind. Ct. App. 2008) (noting Heinzman's convictions for numerous counts of sexual offenses involving minors), trans. denied.

Although Heinzman had not yet been convicted of these crimes at the time he committed the instant crimes, our supreme court has held that "[c]riminal activity that occurs subsequent to the offense for which one is being sentenced is a proper sentencing

22

consideration." Sauerheber v. State, 698 N.E.2d 796, 806 (Ind. 1998) (citing Hoage v. State, 479 N.E.2d 1362, 1366 (Ind. Ct. App. 1985)); see also Williams v. State, 782 N.E.2d 1039, 1051 (Ind. Ct. App. 2003) (citing Sauerheber in holding that it was proper for the trial court to consider as aggravating that the defendant committed an offense in jail after commission of the crime for which he was being sentenced). Indeed, the Sauerheber court held that the defendant's "aggregate history of criminal activity was properly used as an aggravating circumstance," and the fact that most of this activity had occurred after the conviction for which the defendant was being sentenced "d[id] not require the trial court to attach any less significance to it." Id. We therefore conclude that the trial court did not abuse its discretion in finding as an aggravating factor that Heinzman engaged in a pattern of criminal conduct, whether this referred to his repeated acts of molesting Z.B. or whether it referred to Heinzman's subsequent convictions for molestation.

Heinzman also contends that the trial court failed to give sufficient weight to the alleged mitigating factor that Heinzman had no prior criminal history. This argument fails for several reasons. First, the trial court is not required to find mitigating factors or to accept as mitigating the circumstances proffered by the defendant. Kien, 782 N.E.2d at 415. Only when the trial court fails to find a significant mitigator that is clearly supported by the record is there a reasonable belief that it was overlooked. Id. When determining whether a particular mitigator is significant, the trial court is not required to give the same credit or weight to the proffered mitigating circumstance that the defendant does. Battles v. State, 688 N.E.2d 1230, 1236-37 (Ind. 1997).

23

More importantly, as noted earlier, when the trial court sentenced Heinzman in the present case, Heinzman did have a criminal history. Although, at the time he committed the instant crimes, he had yet to commit or be convicted for the acts he subsequently committed, by the time the trial court sentenced Heinzman in this case, he had been convicted and sentenced for several other crimes based on his other sexual acts toward children. Clearly, the trial court did not abuse its discretion by refusing to consider Heinzman's "lack of criminal history" as a significant mitigating factor. See Sauerheber, 698 N.E.2d at 806.

Heinzman also claims that the trial court failed to explain its decision that the aggravating factors outweighed the mitigating factors, thus justifying the enhanced, consecutive sentences it imposed. We disagree. The trial court identified three aggravating factors: that Heinzman's crimes were, by statute, crimes of violence; that Heinzman engaged in a pattern of criminal conduct; and that Heinzman betrayed a position of trust. The trial court found as mitigating that Heinzman had no criminal history at the time the present crimes occurred. The trial court then sentenced Heinzman to eight years on each conviction to be served consecutively. See Tr. pp. 539-41; Appellant's App. p. 12.

Even if the trial court could have better articulated its sentencing decision, the record indicates that the court engaged in the evaluative process. See Kien, 782 N.E.2d at 411. And the existence of these multiple aggravating factors is sufficient to support the trial court's decision to impose consecutive sentences. See O'Connell v. State, 742 N.E.2d 943, 952 (Ind. 2001) (noting the well-established principle that multiple crimes or

24

victims constitutes a valid aggravating circumstances that may justify consecutive sentences); Thorne v. State, 687 N.E.2d 604, 605 (Ind. Ct. App. 1997) (noting that there is no prohibition against using the same aggravating factor to both enhance a sentence and impose consecutive terms).

C. *Appellate Rule 7(B)*

Lastly, Heinzman claims that the sentence imposed by the trial court is inappropriate. Pursuant to Appellate Rule 7(B), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). Our review under Appellate Rule 7(B) should focus on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

We first consider the nature of the offenses. Heinzman repeatedly molested the son of his cousin. It is undisputed that Heinzman was in a position of trust vis-à-vis his victim. In fact, Z.B.'s family asked Heinzman to mentor the boy and help him work

25

through his problems, and the family allowed Z.B. to stay at Heinzman's home. Heinzman took advantage of this situation by repeatedly molesting the boy. Z.B. was apparently already struggling, and he attempted to commit suicide shortly before he disclosed the molestations to his stepmother. As a result of Heinzman's actions, Z.B. still has trouble trusting others. Clearly, the nature of Heinzman's offenses support the imposition of an enhanced sentence.

Heinzman's character provides further support for the trial court's sentencing decision. Although Heinzman had no criminal history at the time he committed the acts against Z.B., by the time he was convicted and sentenced in the present case, he had already been convicted of multiple counts of child molestation involving other children. See Sauerheber, 698 N.E.2d at 806 (holding that the trial court properly considered the defendant's criminal activity subsequent to the instant crime as an aggravating factor). As disclosed in our opinion in Heinzman's other convictions, he molested a child he met through his job as a caseworker for Child Protective Services. Heinzman, 895 N.E.2d at 719. Thus, Heinzman abused a position of trust in that case too.

Considering the nature of the offenses and the character of the offender, and giving due consideration to the trial court's sentencing decision, we cannot say that Heinzman has met his burden on appeal of demonstrating that his aggregate twenty-four year sentence is inappropriate.

D. *Sentence on Cause FC-46*

Heinzman also claims that, pursuant to the terms of his plea agreement, the trial court was required to suspend his sentence in Cause FC-46, the cause in which Heinzman

26

pleaded guilty to Class D felony sexual battery on E.B., Z.B.'s younger brother. The State concedes that Heinzman's plea agreement did call for a suspended sentence. Yet the trial court indicated in its oral sentencing statement that Heinzman's sentence on this count was to be executed, which would be contrary to the plea. We first note that Heinzman made no objection to the trial court's sentencing statement indicating that his sentence in Cause FC-46 was to be executed. Moreover, this sentence was ordered to be served concurrently with Heinzman's aggregate twenty-four year sentence in Cause FC-239. Thus, even if the trial court had suspended Heinzman's sentence in Cause FC-46, this sentence would be "served" while Heinzman was serving his executed sentence in Cause FC-239. We therefore consider this error to be harmless, as remand for resentencing would result in the exact same sentence for Heinzman.

**Conclusion**

The trial court did not err in denying Heinzman's motion for discharge because Heinzman waived his right to a speedy trial under Criminal Rule 4(C) by failing to object when the trial court set a trail date outside the one-year time limit. And because Heinzman himself was responsible for some delay in the trial, did not timely assert his right to a speedy trial, and has failed to demonstrate resulting prejudice, we cannot say that the delay in his trial violated his constitutional right to a speedy trial.

With regard to the admission of evidence, the trial court did not abuse its discretion in admitting evidence that the report of Heinzman's abuse had been "substantiated," inasmuch as this testimony did not run afoul of Evidence Rule 704(b).

27

Similarly, the letter written by the victim was admissible under an exception to the hearsay rule and was cumulative of the victim's testimony.

Heinzman's convictions on three counts of Class C felony child molesting do not constitute double jeopardy because there was evidence establishing that Heinzman molested the victim on at least four occasions. Thus, there was no reasonable possibility that the jury relied on the same evidentiary facts to convict Heinzman on all three counts.

Lastly, the trial court did not abuse its discretion in sentencing Heinzman to an aggregate term of twenty-four years. This sentence is not inappropriate given the nature of the offense and the character of the offender.

Affirmed.

ROBB, C.J., and BAILEY, J., concur.