## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 12 2016, 6:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gary L. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Kaylor, | December 12, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 71A03-1603-CR-586 |
| v. | Appeal from the St. Joseph Superior Court |
| State of Indiana, | The Honorable Jerome Frese, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 71D03-1503-FA-2 |

**Altice, Judge.**

## Case Summary

James Kaylor sexually abused his granddaughter, C.G., from the time she was in kindergarten until around sixth grade. Out of fear that the same would happen to her younger sister, C.G. reported the abuse to her school counselor in eighth grade. Kaylor immediately fled the State but then turned himself in to authorities in Kansas, admitting that he had inappropriately touched his granddaughter. A jury subsequently found Kaylor guilty of three counts of child molesting, one as a class A felony and two as class C felonies. Upon entering judgments of conviction on these three counts, the trial court sentenced Kaylor to an aggregate sentence of fifty-seven years in prison. Kaylor raises a number of issues on appeal, which we restate as follows:

> 1. Did comments made by the trial court in the presence of all potential jurors before jury selection constitute reversible error?

> 2. Did the trial court abuse its discretion by denying Kaylor's motion to dismiss?

> 3. Did the trial court commit fundamental error by failing to instruct the jury on the mens rea element for child molesting?

> 4. Do Kaylor's convictions for both class C felony counts violate our state double jeopardy principles?

> 5. Is Kaylor's fifty-seven-year sentence inappropriate?

We affirm.

## Facts & Procedural History

[2] C.G. was born in March 2001 and grew up spending a lot of time with her maternal grandparents, Sharon and James Kaylor, who lived close to C.G.'s family. Kaylor would often pick up C.G. from kindergarten when C.G.'s parents were unavailable. Around this time, C.G. also began spending occasional overnights at her grandparents' home.

[3] During C.G.'s kindergarten year, Kaylor began molesting her. This continued about a couple times a month for the next six or so years. On March 2, 2015, when C.G. was in eighth grade, C.G. disclosed the abuse to a school counselor out of concern that Kaylor had begun abusing her six-year-old sister. That same day, Kaylor learned of the disclosure and fled to Kansas. On March 4, 2015, he admitted to John Boutwell, a friend in Kansas, that he had touched his granddaughter inappropriately. Boutwell told him to leave, advised Kaylor to turn himself in, and called the local police. Kaylor turned himself in to authorities in Kansas that day and admitted that he "did some inappropriate things" to his granddaughter. *Transcript* at 517.

[4] On March 10, 2015, the State charged Kaylor with three counts of child molesting, one as a class A felony (Count I) and two as class C felonies (Counts II and III). Each charge alleged that the respective offense occurred on or between January 1, 2006 and December 31, 2011. At the jury trial C.G. detailed several distinct instances of abuse during this period but indicated that there were many more.

[5] The first specific incident C.G. could recall took place after Kaylor picked her up one day from kindergarten. C.G. testified that Kaylor rubbed her vagina with his hands either over or under her clothing. Around this same time, Kaylor also either took or attempted to take pictures of C.G. while she was naked in his bedroom and was stopped by his ex-wife, C.G.'s grandmother.

[6] On another occasion, Kaylor drove C.G. to a parking lot of an abandoned building. He touched her vagina underneath her clothes with his hand and then pulled his own pants down. He took C.G.'s hand and placed it on his penis.

[7] C.G. testified that on more than one occasion Kaylor placed his mouth on her vagina. She recounted a specific instance when she was about ten years old and he drove her in a van to the parking lot of a vacant Wal-Mart. After folding down the seats, he moved her to the back of the van. There, he removed C.G.'s pants and underwear. Kaylor then placed his mouth on C.G.'s vagina. C.G. recalled "crying, just waiting for it to be over." *Id.* at 413.

[8] C.G. described to the jury three other specific instances of touching that she could recall. One took place at her own home when she was about ten years old. Kaylor asked C.G. to change clothes and then he touched her vagina and breasts until her parents came home. Another time, when she was in sixth grade, Kaylor fondled her vagina while they watched a movie. He placed a blanket over himself and C.G. because his grandson was also in the room. Finally, C.G. testified to a time when Kaylor rubbed her vagina over her pants while sitting in a booth at a restaurant with other members of her family.

The jury found Kaylor guilty as charged on January 20, 2016. Thereafter, on February 29, 2016, the trial court sentenced him to consecutive terms of imprisonment of forty-five years for Count I, six years for Count II, and six years for Count III. This resulted in an aggregate sentence of fifty-seven years. Kaylor appeals his convictions and sentence. We will provide additional facts and procedural history below as needed.

## Discussion & Decision

### 1. Trial Court's Comments

The United States and Indiana Constitutions guarantee the right to an impartial jury. *Oswalt v. State*, 19 N.E.3d 241, 245 (Ind. 2014). The purpose of voir dire is to determine whether the potential jurors can render a fair and impartial verdict in accordance with the law and evidence. *Kimbrough v. State*, 911 N.E.2d 621, 628 (Ind. Ct. App. 2009).

In this case, before jury selection formally began and outside the presence of counsel, the trial court brought all the potential jurors into the courtroom and played a recorded message, which had been left on the bailiff's voicemail by prospective juror 56. The message contained openly racist sentiments that included racial slurs against Hispanics and African-Americans. The trial court condemned the statements, calling juror 56 "despicable" and "contemptible." *Transcript* at 5. Thereafter, the court told the juror to leave and that she was very lucky that she was not going to jail. The court then apologized to the remaining potential jurors because juror 56's statements were "shameful" and a

"disgrace." *Id*. at 6. The court asked the jury panel if anyone else shared juror 56's opinions and stressed the importance of fairness to a criminal defendant.

[12] While the jury panel viewed a video regarding jury service, the trial court spoke with counsel in chambers and informed them of the colloquy that had taken place regarding juror 56. Defense counsel moved for a mistrial, which the court construed as a motion to strike the jury panel. In denying the motion, the court stated in part: "I think the panel is going to be very sensitive to being fair, and the defendant is not directly affected because he is not Hispanic or African-American." *Id*. at 12.

[13] On appeal, Kaylor asserts: "After witnessing the trial court's public shaming of juror 56, the jury panel would not feel free to express their opinions and biases for fear of embarrassment or retribution." *Appellant's Brief* at 7. Kaylor claims he was "denied due process when he was unable to obtain a fair and impartial jury." *Id*. at 11.

[14] Kaylor's concerns are not borne out in the record. During the day-long process of jury selection, the trial court and counsel carefully explored whether each potential juror could be fair. Their inquires did not address racial bias, as that was not an issue in this case. Rather, the focus during voir dire was on the nature of a child molesting allegation and each potential juror's ability to provide fairness to the defendant given such a charge. The trial court consistently encouraged jurors to be honest about their emotions, and a significant number of jurors indicated that they would have difficulty being fair

and impartial in light of the charges. In each instance, the trial court responded in an empathetic manner[1] and the juror was excused for cause. We find no support in the record for Kaylor's claim that he was denied a fair and impartial jury.

## 2. Motion to Dismiss

Prior to trial, Kaylor filed a motion to dismiss "for lack of specificity" in the charging information. *Appendix* at 42. He argued, as he does on appeal, that because the charged acts were alleged to have occurred sometime over a five-year period, the charges lacked sufficient specificity to inform him of the specific criminal acts that he was alleged to have committed. Thus, he claimed the lack of specificity regarding the dates of each alleged offense hindered his ability to "prepare an adequate defense and avoid double jeopardy." *Id.*

We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion, which occurs only if a trial court's decision is clearly

---

[1] The following is one example of the civil dialogue between the trial court and a potential juror:

> [Juror]: It's not just the charge, sir. It's also - - I don't believe that human beings can do that. I actually have a problem with the entire proceeding.

> [Court]: So for you - - you want to be fair and what you're telling me is, Judge, I have to tell you I just can't be fair in this case?

> [Juror]: That's true.

> [Court]: Right?

> ****

> [Court]: Well, that's okay. That's all right. Lawyers, I'm going to excuse [the juror]. And I appreciate your candor. There's nothing to be ashamed about. It's just the way you are at this. Okay? All right. You're excused.

*Id.* at 114-15.

against the logic and effect of the facts and circumstances. *Pavlovich v. State*, 6 N.E.3d 969, 974 (Ind. Ct. App.), *trans. denied.*

[17] Ind. Code § 35-34-1-2 sets forth the required contents of a charging information, "the overarching purpose of which is to give the defendant particular notice of the crimes with which [he] is charged during the applicable statute of limitations period so that [he] can prepare an appropriate defense." *Woods v. State*, 980 N.E.2d 439, 443 (Ind. Ct. App. 2012). Relevant here, the statute provides that the information shall state "the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense" and "the time of the offense as definitely as can be done if time is of the essence of the offense". I.C. § 35-34-1-2(a)(5) and (6). It is well established, however, that time is not of the essence in cases involving child molesting unless the age of the victim serves to elevate the charged offense, which is not the case here. *See Love v. State*, 761 N.E.2d 806, 809 (Ind. 2002); *Buzzard v. State*, 712 N.E.2d 547, 551 (Ind. Ct. App. 1999), *trans. denied*.

[18] Kaylor had adequate information in order to prepare a defense to the charges that he molested his granddaughter. Moreover, to the extent he is concerned about double jeopardy issues, we have held that it is the record, not just the information, which provides protection from subsequent prosecutions for the same offense. *Buzzard*, 712 N.E.2d at 551. Kaylor has failed to establish that the trial court abused its discretion in denying his motion to dismiss the charges.

### 3. Jury Instructions

Kaylor next argues that the trial court committed error by not instructing the jury on the mens rea for child molesting. He frames his argument in terms of fundamental error because he neither objected to the trial court's instruction nor offered an instruction of his own.

We will review an issue that was waived at trial only for fundamental error. *Baker v. State*, 948 N.E.2d 1169, 1178 (Ind. 2011). To be considered fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thus depriving the defendant of fundamental due process. *Id*. The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. *Id.* In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. *Id.* at 1178-79. Harm is determined not by conviction but by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Id.* at 1179.

In this case the only issue was the credibility of the alleged victim. The defense acknowledged that Kaylor committed class C felony child molesting but challenged C.G.'s testimony with regard to the class A felony charge. Thus, the defense strategy at trial was to undermine C.G.'s credibility by, among other things, pointing out inconsistencies in her statements. Ultimately the jury resolved the credibility dispute against Kaylor. Further, Kaylor's intent was not

– and in reality could not have been – at issue in this case. *See Medina v. State*, 828 N.E.2d 427, 431 (Ind. Ct. App. 2005) (observing, with respect to class A felony child molesting, "[q]uite simply, it is impossible for one to accidentally commit the acts committed by Medina"), *trans. denied*.

[22] Under these circumstances, we conclude Kaylor has not demonstrated that the alleged instructional error so prejudiced him that he was denied a fair trial. *See Baker*, 948 N.E.2d at 1179. *See also Medina*, 828 N.E.2d at 431 (finding harmless error in the trial court's failure to give a mens rea instruction with regard to a class A felony child molesting charge).

### 4. Double Jeopardy

[23] Kaylor also contends that his convictions for two counts of class C felony child molesting – Counts II and III – constitute double jeopardy in violation of the Indiana Constitution. In this regard, he asserts that the charges were identical, the final instructions did not inform the jury what different evidence supported each charge, and the State did not assign specific instances to each count during final argument.

[24] In *Richardson v. State,* our Supreme Court established a two-part test for analyzing double jeopardy claims under the Indiana Constitution and concluded that two or more offenses are the "same offense" for double jeopardy purposes "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one

challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d 32, 49 (Ind. 1999).

> Thus, a double jeopardy violation may occur if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts. *Williams v. State,* 892 N.E.2d 666, 668-69 (Ind. Ct. App. 2008). To establish a violation of the actual evidence test, the defendant must demonstrate a "reasonable possibility" that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Id.*

*Heinzman v. State*, 970 N.E.2d 214, 224-25 (Ind. Ct. App. 2012), *aff'd in relevant part,* 979 N.E.2d 143 (Ind. 2012).

[25] Kaylor argues that a reasonable possibility exists that the jury used the same evidence to establish child molesting in Count II and Count III. Notwithstanding the lack of specificity in the charging information and instructions, we do not agree that such a reasonable possibility exists here.

[26] The State presented evidence that Kaylor repeatedly molested C.G. from the time she was in kindergarten through about sixth grade. C.G. testified that Kaylor touched her vagina "maybe a couple times a month" during the period of abuse. *Transcript* at 410. C.G. went on to describe five specific instances of such fondling that took place in various locations, including Kaylor's car, his home, C.G.'s home, and at a restaurant. During closing argument, the State made clear that to convict on both Counts II and III the jury must find two

separate instances of fondling.[2]  The State then detailed each of the many specific incidents of fondling to which C.G. testified.

[27]   There was evidence of more than two acts of class C molestation by Kaylor.[3] Accordingly, we cannot say that there was a reasonable possibility that the jury relied on the same evidentiary facts to convict Kaylor of the two separate counts.  *See Heinzman*, 970 N.E.2d at 225 (upholding three convictions of class C felony child molesting against double jeopardy challenge where evidence established at least four separate acts of molestation).

### 5.  Sentencing

[28]   Finally, Kaylor contends that his sentence is inappropriate in light of the nature of the offenses and his character.  Pursuant to Ind. Appellate Rule 7, we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7).  Our review in this regard is "very deferential" to the

---

[2] After acknowledging that Counts II and III were both fondling charges, the State stressed:

> Now, we have to prove it twice in order for you to convict on Count II and on Count III.  If you only find that it happened once and you all agree on one time, then you can convict on one of the counts.  If you can find that it happened twice and you're all convinced that it happened on two separate times, then you can convict on both.

*Id.* at 554.

[3] At the conclusion of his double jeopardy argument, Kaylor appears to raise an issue regarding jury unanimity.  He cites no authority for this separate argument, which we find waived.  *See* Ind. Appellate Rule 46(A)(8)(a) (requiring each of an appellant's contentions to be supported by citations to the authorities, statutes and the Appendix or parts of the Record on Appeal relied on).

trial court. *See Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[29] "The principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014). Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original). Kaylor bears the burden of persuading us that his sentence is inappropriate. *See Conley*, 972 N.E.2d at 876.

[30] Kaylor was convicted of three counts of child molesting, one as a class A felony (Count I) and two as class C felonies (Counts II and III). The sentencing range for a class A felony is between twenty and fifty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4(a). The trial court imposed forty-five years in prison on Count I. The sentencing range for the class C felony offenses is between two and eight years, with an advisory sentence of four years. I.C. § 35-50-2-6(a). The trial court imposed six years for each of Counts II and III, and the court ordered the sentences for all three counts to be served

consecutively. This resulted in an aggregate sentence of fifty-seven years – nine years less than the maximum. Kaylor asks that we reduce his sentence on Count I to thirty years and order all sentences to be served concurrently for an aggregate sentence of thirty years in prison.

[31] We turn first to the nature of the offenses, which we find particularly egregious. Kaylor began molesting his granddaughter when she was near the tender age of five. This abuse continued approximately twice a month for the next six years. It began with fondling and escalated by the time C.G. was ten years old to Kaylor performing oral sex on her. During one such instance, he drove C.G. to a vacant parking lot, removed her pants and underwear, and performed oral sex on her in the back of a van, while C.G. cried waiting for it to be over. Kaylor was even so brazen as to covertly molest C.G. while in the same room as her cousin and in a booth at a restaurant with family. Because he was her grandfather and a caregiver at times, he stood in a position of trust with C.G. and her family and had regular access to her.

[32] Kaylor notes that he stopped molesting C.G. of his own accord when she was in sixth grade – about two years before she reported the abuse to protect her younger sister. Considering the many years that he sexually molested C.G., we find little solace in the fact that he stopped when she was no longer of a tender age and was entering adolescence. Further, Kaylor turned himself in only after fleeing the state and being rejected by a friend (who called the local police to

report Kaylor). We also find Kaylor's claims of remorse wholly unconvincing, as reflected by his multiple references to C.G. as a liar.[4]

[33] Turning to his character, Kaylor notes that his prior criminal history was unrelated to child molestation, minor, and years prior to sentencing in this case. Indeed, his history of arrests and convictions is drug and alcohol related, and his last of these offenses was committed in 1997. More telling of Kaylor's character, however, is his subsequent, persistent abuse of his granddaughter for six years. He continued the abuse even after C.G.'s grandmother found him taking photographs of a naked, five-year-old C.G. As noted above, the abuse escalated and was carried out in various locations and sometimes even in the presence of family. Kaylor's actions are that of a depraved individual. He attempts to minimize his behavior by pointing to his self-reported history of sexual abuse as a child. Yet Kaylor was sixty-five years old at the time he was sentenced in the instant case and fifty-five when he began molesting C.G. He had ample time to deal with issues from his childhood but apparently chose not to do so and rather levied the same fate on his granddaughter.

---

[4] In the lengthy addendum he filed with the PSI, Kaylor began by briefly indicating his remorse and then quickly turned to an attempt to explain his behavior based on his childhood. Thereafter, he began attacking C.G.'s father as a liar and drug user and then turned his attention to C.G. He repeatedly called her a "lier [sic]" and indicated that she is "known to cause drama in the family unit with her cousins and peers." *Appendix* at 111. Though at no point did he deny molesting her, Kaylor asserted that C.G.'s motive in disclosing the abuse was to hide the fact that she was sexually active. In his ten-page rant, Kaylor also accused his victim of drinking alcohol, smoking marijuana, and staying all night at her boyfriend's house. He ended as follows: "I DO NOT WANT TO DIE IN PRISON I DO NOT WANT TO GO TO PRISON I AM A VICTIME [sic] TOO!" *Id.* at 116. A review of Kaylor's entire handwritten statement is revealing and disheartening – certainly not representative of true remorse.

[34]     In sum, we find Kaylor's request for the advisory sentence of thirty years on Count I, as well as fully concurrent sentences, wholly unfitting. The fifty-seven-year sentence imposed by the trial court was not inappropriate in light of Kaylor's character and the nature of his offenses.

[35]     Judgment affirmed.

[36]     Bradford, J. and Pyle, J., concur.