George A. FEUSTON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 38A02–1011–CR–1175.

Court of Appeals of Indiana.

Aug. 19, 2011.

Dale W. Arnett, Winchester, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

George A. Feuston was arrested in Jay County and charged with theft. While out on bond, Feuston failed to appear for his pretrial conference, and he was later arrested in Delaware County on an unrelated charge. After he was incarcerated in Delaware County, no further action was taken in the Jay County case until Feuston, acting pro se, filed a "Motion Requesting Final Disposition of Charges/Detainers." Appellant's App. at 20. Thereafter, Feuston was appointed counsel, who filed a motion for discharge pursuant to Indiana Criminal Rule 4(C). The trial court denied the motion and certified its order for interlocutory appeal. We accepted jurisdiction, and oral argument was held on June 27, 2011, in Indianapolis. Concluding that Feuston caused the delay in the Jay County case by absconding and failing to appear at his pretrial conference, we affirm.

### Facts and Procedural History

On March 3, 2009, Feuston was charged in Jay County with class D felony theft. He was arrested the following day. On March 6, 2009, Feuston posted bond and the initial hearing was held. A pretrial conference was scheduled for May 5, 2009, but Feuston failed to appear, and a warrant was issued for his arrest.

The next entry on the chronological case summary ("CCS") is dated August 17, 2010. On that date, Feuston filed a pro se "Motion Requesting Final Disposition of Charges/Detainers." *Id.* In his motion, Feuston alleged that he had been arrested in Delaware County on August 15, 2009, for class C felony burglary, and that the warrant from Jay County "was read to the Defendant upon his arrival at the Delaware County Jail, which resulted in the hold from Jay County." *Id.* He argued that more than a year had passed since his arrest in Jay County and that he was therefore entitled to discharge pursuant to Indiana Criminal Rule 4(C), which requires the State to try defendants within a year, subject to certain possible extensions.

The trial court held a hearing on Feuston's motion on August 18, 2010. The CCS entry for that date states that the court "is now aware of the Defendant's location." *Id.* at 2. Counsel was appointed for Feuston, and a jury trial was set for October 21, 2010.

On September 1, 2010, defense counsel entered an appearance, and on October 7, 2010, defense counsel filed a motion for discharge, which also argued that Feuston was entitled to discharge pursuant to Criminal Rule 4(C). Attached to the motion were copies of what purported to be

fax correspondence between the Delaware and Jay County Jails, which read:

> 8/16/09 WARRANT # IS 38D01–0903–FD–031 [1]
>
> 230–726–8188 <—PLEASE CONTACT WHEN SUBJECT IS READY FOR PICK UP .. # 362
>
> 8/18/2009 JAIL COMMANDER OF JAY COUNTY TX'D AND SAID THEY WILL BE HERE TO PICK UP 8/19/2009 IN THE MORNING ... 377

*Id.* at 45–46. Also attached to the motion were Feuston's Delaware County Jail records, which show that he was booked on August 16, 2009, and was checked out to attend court in Jay County on August 19, 2009; August 17, 2010; and September 28, 2010.

However, there is no CCS entry in the Jay County case on or around August 19, 2009. The CCS indicates that the bench warrant was "returned Served by the Sheriff of Jay County on 8–17–2010." *Id.* at 2. The return filed by the sheriff states that the warrant was served on August 17, 2010, and the document's file-stamp shows that it was filed on August 18, 2010. *Id.* at 25.

The trial court held a hearing on the motion for discharge on October 12, 2010. At the hearing, Feuston argued that the attachments to his motion showed that Jay County authorities were aware that he was incarcerated in Delaware County:

> [A]s we can see from the other attachments to the Motion that was made which are clearly from the Delaware County Jail, the records show that they did have the warrant. That they even had communication with the Jay County Jail. If somewhere between when the warrant was read to Mr. Feuston there at the Delaware County Jail and it was returned to Jay County, if there was

some sort of lapse in time because of some one [sic] else's mistake, that should not be attributed to the Defendant.... It even shows that the Jail Commander of Jay County indicated that they would be picking Mr. Feuston up at some point.

Tr. at 9.

The trial court denied the motion on October 13, 2010. The trial court noted that Feuston had not explained where he was between the date of his pretrial conference (May 5, 2009) and his arrest in Delaware County (August 16, 2009) and concluded that Feuston was responsible for all the delay from May 5, 2009 to August 17, 2010, when he filed his motion. The trial court certified its order for interlocutory appeal, and we accepted jurisdiction.

### Discussion and Decision

██ Feuston argues that the trial court erred by denying his motion for discharge pursuant to Criminal Rule 4(C), which provides:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar.... Any defendant so held shall, on motion, be discharged.

Criminal Rule 4 implements the defendant's constitutional right to a speedy trial. *State v. Jackson,* 857 N.E.2d 378, 380 (Ind. Ct.App.2006). Under this rule, the State

---

1. This is the cause number in the Jay County case.

has an affirmative duty to bring the defendant to trial within one year of being charged or arrested, subject to the listed exceptions. *Cook v. State,* 810 N.E.2d 1064, 1065 (Ind.2004). The defendant has no obligation to remind the court of the State's duty, nor is he required to take any affirmative action to see that he is brought to trial within the statutory time period. *State v. Smith,* 495 N.E.2d 539, 541 (Ind. Ct.App.1986). When a defendant makes a motion for discharge pursuant to Criminal Rule 4, the burden is on the defendant to show that he has not been timely brought to trial and that the defendant is not responsible for the delay. *Martin v. State,* 419 N.E.2d 256, 259 (Ind.Ct.App.1981).

■ In *Upshaw v. State,* a panel of this Court noted:

> There appears to be a disagreement about the proper standard of review to apply to appeals pursuant to Criminal Rule 4. *Compare Mork v. State,* 912 N.E.2d 408, 410 (Ind.Ct.App.2009) (applying a de novo standard of review) *and Bartley v. State,* 800 N.E.2d 193, 195 (Ind.Ct.App.2003) (same) *with Bowman v. State,* 884 N.E.2d 917, 919 (Ind.Ct. App.2008) (applying an abuse of discretion standard), *trans. denied, and Paul v. State,* 799 N.E.2d 1194, 1197 (Ind.Ct. App.2003) (applying a clearly erroneous standard).

934 N.E.2d 178, 181–82 (Ind.Ct.App.2010), *trans. denied. Upshaw* did not resolve this disagreement because the panel concluded that it would affirm regardless of which of these standards applied. We believe that the discrepancies have arisen because sometimes the trial court must resolve disputed facts, but on other occasions simply applies the law to undisputed facts. *Compare Leek v. State,* 878 N.E.2d

276, 277 (Ind.Ct.App.2007) (noting that whether delays in scheduling a trial have occurred and whether they are chargeable to the defendant are factual determinations for the trial court), *with Pelley v. State,* 901 N.E.2d 494, 498 (Ind.2009) (where the sole issue was whether Ind. Criminal Rule 4(C) excludes time spent on State's interlocutory appeal of an order, review was de novo). We conclude that factual findings made by the trial court are entitled to deference, but legal conclusions are to be reviewed de novo.

Feuston was released on bond in Jay County and then was arrested in Delaware County. We faced a similar factual scenario in *Rust v. State,* 792 N.E.2d 616 (Ind.Ct.App.2003).[2] Rust was arrested and charged in Hancock County in February 2001. After bonding out, Rust was arrested and charged in Marion County in March 2001. He bonded out again and appeared at his initial hearing in Marion County, but then failed to appear for subsequent hearings in both counties, and each county issued a warrant for his arrest. In October 2001, Rust surrendered in Hancock County and filed a "Notice of Surrender" in Marion County while he was being held at the Hancock County Jail. *Id.* at 617. Rust pled guilty to the Hancock County charges and was sentenced in August 2002. After he served that sentence, he was brought to Marion County.

In October 2002, Rust moved to dismiss the Marion County charges pursuant to Criminal Rule 4(C). The trial court denied the motion, and Rust appealed. Rust conceded that the clock was tolled from the time that he failed to appear at his hearings until he surrendered himself. The parties disputed whether the filing of

---

**2.** Our supreme court granted transfer in *Rust,* but later vacated the transfer order. *Rust v.* *State,* 804 N.E.2d 760 (Ind.2003).

Rust's Notice of Surrender restarted the clock. We concluded that "once the trial court and the State were notified via the Notice of Surrender where Rust was incarcerated, the State was obligated to proceed with the case in a timely manner," and the State "could not simply wait until the Hancock County sentence was satisfied before moving forward with the Marion County charges." *Id.* at 620. Therefore, we reversed the denial of his motion for discharge. *Id.*

We again faced a similar scenario in *Werner v. State*, 818 N.E.2d 26 (Ind.Ct. App.2005), *trans. denied.* Werner was arrested in Randolph County and was charged in September 2000. He appeared at his initial hearing and requested a continuance of the hearing. The trial court granted the continuance and subsequently rescheduled several more times. In November 2000, Werner was arrested in Wayne County, and someone called the Randolph County Clerk's Office to inform the office of Werner's incarceration. When Werner failed to appear for the initial hearing in January 2001, the Randoph County Court rescheduled it again. Werner's bond agent later called the bailiff and informed him that Werner was incarcerated in Wayne County. After further delays, Werner filed a motion for discharge pursuant to Criminal Rule 4(C) in March 2003. The Randolph County Court denied the motion.

Werner appealed, and a majority affirmed. The majority found *Rust* distinguishable because Werner had not provided the court written notice of his whereabouts. *Id.* at 31. The majority acknowledged that *Rust* did not require written notice, but determined that it should be required as a matter of good policy:

Trial courts have substantial case loads and complicated dockets to manage, and,

if we did not require that litigants communicate with each other and the court formally and in writing, the system would soon devolve into chaos. There is simply no guarantee that a telephone message relayed to someone in a bailiff's office or clerk's office would be communicated to the court or to the other involved parties.

*Id.*

Judge Robb dissented in *Werner*, stating:

I acknowledge that written notice is the easiest and best proof that notice has in fact been given, and I understand the difficulties that could be encountered if we held that oral notification was sufficient in all cases. Thus, if there is a dispute about whether notice has been given, I agree that notification in writing would be required. But in this case, there seems to be no dispute that the trial court received both of the telephone calls made on Werner's behalf to inform the court of his incarceration in Wayne County.

*Id.* at 32 (Robb, J., dissenting).

The State argues that Feuston's case fits squarely within *Werner* and urges us to affirm the trial court. Feuston, however, argues that notice of the defendant's whereabouts is irrelevant because the court can set a trial date regardless of whether the defendant is present. In support, he cites *Schwartz v. State*, 708 N.E.2d 34 (Ind.Ct.App.1999).

The facts of *Schwartz* are as follows:

The record shows that on July 27, 1996, Schwartz was charged by information with child molesting as a Class B felony and carrying a handgun without a license as a Class A misdemeanor. He had been arrested the day before. The information alleged that the offenses occurred in Madison County and thus the

charges were filed in the Madison Circuit Court. On July 29, 1996, Schwartz apparently appeared in court wherein the omnibus date was set for September 29, 1996 and a pretrial conference was scheduled for October 16, 1996. After the July 29 date, but before the scheduled omnibus date, counsel entered his appearance on Schwartz' behalf and filed a motion to suppress evidence. On September 9, 1996, the motion to suppress was withdrawn. On that same date an order was entered stating "[t]rial to be set at pretrial conference." The record does not show that either an omnibus hearing was conducted or a pretrial conference held. Rather, the record reveals that on September 3, 1997, the State requested the trial court to set this case for trial. The trial court granted the request and a trial was scheduled for February 17, 1998.

On the morning of trial, after the jury was sworn, Schwartz brought to the court's attention that the alleged child molesting offense occurred in Hamilton County and not Madison County as charged. Thereafter a lengthy discussion ensued between the court, the State, and defense counsel concerning proper venue. Ultimately, over Schwartz' objection the trial court granted the State's motion to amend the child molesting charge to assert that the offense occurred in Hamilton County. Schwartz then moved to transfer venue of the case to Hamilton County. The motion was granted. Three days later Schwartz filed a motion for discharge. After a hearing the trial court denied the motion. In so doing the trial court declared:

> Based on what I can see the key to this is you didn't appear for the pretrial conference. The pretrial was set for 10/16/96. On 9/9/96 motion to suppress withdrawn, trial to be set at

pretrial conference. There is no entry for the 10/16 so you didn't appear at the pretrial conference. So you have waived your rights. . . . I am saying since they did not appear for the pretrial the delay is attributable to the defense.

After venue of the case was transferred to Hamilton County, Schwartz renewed his motion for discharge. The motion was denied. This interlocutory appeal followed.

*Id.* at 35–36 (citations and footnote omitted).

We refused to infer that Schwartz had failed to appear for the pretrial conference:

> The record is completely silent on whether a pretrial conference was ever held. Where the record is silent concerning the reason for a delay, the delay is not attributable to the defendant. Further, assuming a pretrial conference was held, and further assuming Schwartz did not appear, we fail to see why a trial date could not have been set in his absence. The inference here is that Schwartz' absence was the cause of the State not moving the trial court to schedule this matter for trial in a timely fashion. . . . However, bringing a defendant to trial within a year is an affirmative duty of the State.

*Id.* at 37 (citations omitted).

■ Feuston argues that because the State has an affirmative duty to bring him to trial in a timely manner and because a trial date can be set regardless of whether he appeared for his pre-trial conference, we should follow *Schwartz.* However, we agree with the State that *Schwartz* stands for the proposition that when the record is silent as to the reason for a delay, it will not be charged to the defendant, and our statements about setting a trial in the

defendant's absence are merely dicta. Feuston conceded at oral argument that the trial court has no duty to set a trial date in the defendant's absence. Nor are we inclined to create such a duty; requiring trial courts to fill their calendars with "place holder" trial dates for defendants who have failed to appear or whose whereabouts are unknown would surely complicate scheduling matters in trial courts as a whole, especially because criminal trials are given first priority. Furthermore, we agree with the State that "[w]hen a defendant fails to appear for a hearing and his whereabouts are unknown, it makes little sense to set a trial date ... unless it is to become the norm to try defendants *in absentia* even though it is certain that the defendant has not been informed of a trial date." Appellee's Br. at 9.

Feuston also conceded that the trial court and prosecutor did not have actual or written notice of his whereabouts until he filed his motion on August 17, 2010.[3] Although Feuston alleged that the warrant was read to him soon after he was arrested in Delaware County, he did not present any evidence in support of that allegation, and the court's records show that the warrant was not served and returned until August 17, 2010. Feuston's records from the Delaware County Jail indicate that he was checked out to attend court in Jay County on August 19, 2009, but the CCS from the Jay County case has no entry on or around August 19, 2009. Thus, there was a factual issue for the trial court to resolve, and the trial court apparently concluded that Feuston did not appear in court in Jay County on this case in August 2009.

■ The fax communications that Feuston attached to his motion seemingly indicate that the Jay County Jail was aware that he was incarcerated in Delaware County in August 2009.[4] Even if that is true, we conclude that the knowledge of a police or correctional officer should not be imputed to the trial court or prosecutor in these circumstances. The purpose of Criminal Rule 4(C) is to promote early trials and not to discharge defendants. *Caldwell v. State,* 922 N.E.2d 1286, 1288 (Ind.Ct.App.2010), *trans. denied.* Unnecessary delays will not be deterred by granting discharges in cases where the trial court and prosecutor did not have actual knowledge of the defendant's whereabouts. This is true regardless of whether some other agent of the State has this knowledge.[5]

In *State ex rel. Johnson v. Kohlmeyer,* 261 Ind. 244, 303 N.E.2d 661 (Ind.1973) (opinion on rehearing), the defendant was incarcerated in Johnson County when he was indicted in Marion County. An arrest warrant was issued and served on the

---

3. Because the first notice provided to the court and prosecutor was a written motion filed with the court, we need not address whether a writing is required in all cases.

4. In its brief, the State notes that the fax communications and Delaware County Jail records were attached to Feuston's motion but were never entered into evidence. However, at oral argument, the State conceded that it did not object to Feuston's reliance on the documents in the trial court and that the documents were available for the court's consideration.

5. At oral argument, Feuston asserted that officers often delay service of a warrant on a defendant who is already incarcerated in order to keep the defendant from receiving credit time in two different cases. However, Feuston did not present any evidence as to why the service was delayed in his case, and we decline to infer that service was intentionally delayed or delayed for an improper motive. We need not decide today whether the outcome would be different if there were proof of intentional misconduct or dereliction of duty on the part of a State agent.

defendant, but no return of the warrant was filed until much later. The defendant filed a motion for discharge, which the trial court denied. Our supreme court affirmed, stating:

> The Supreme Court of the United States has noted that where a person is charged with more than one crime he cannot be tried for all at the same time. His rights to a speedy trial must be considered with regard to the practical administration of justice. *Beavers v. Haubert* (1905), 198 U.S. 77, 86, 25 S.Ct. 573, 49 L.Ed. 950, 954.
>
> The authorities of Johnson County were entitled to carry out their duties pursuant to the warrant issued in that county before surrendering the [defendant] to Marion County. This would be true even if the Sheriff of Johnson County had immediately made return on the [warrant] issued by the judge in Marion County and the Marion County Judge had been fully aware of the fact that [the defendant] was being held in Johnson County. *In the case at bar, however, we have the additional fact that the Sheriff of Johnson County did not, in fact, make a return on the [warrant] issued by Marion County and, as a result, the issuing judge in Marion County did not have the situation called to his attention.*

*Id.* at 247, 303 N.E.2d at 663 (opinion on rehearing) (italics added). *Johnson* is distinguishable from Feuston's case in that Johnson was already incarcerated in one county at the time that charges were filed in a second county; nevertheless, the opinion indicates that the court's knowledge as—opposed to the sheriff's—is a relevant consideration. Thus, *Johnson* lends support to our conclusion that the knowledge of other State agents should not be imputed to the court and prosecutor, because the court and prosecutor alone bear the responsibility of bringing the defendant to trial in a timely manner.

█ Furthermore, we note that Feuston does not have clean hands; the trial court and prosecutor lost track of his whereabouts in the first place because he absconded and failed to appear for his pretrial conference.[6] When a defendant absconds, the ensuing delay is caused by his act; therefore, we conclude that the Criminal Rule 4(C) clock does not resume until the trial court and prosecutor have actual knowledge of his whereabouts. To hold otherwise would reward a defendant who absconds in the hope that the court and prosecutor will lose track of his case. Feuston presented no evidence that the trial court and prosecutor knew where he was before he filed his motion on August 17, 2010; therefore, we conclude that he has not demonstrated that he is entitled to a discharge.

Affirmed.

ROBB, C.J., concurs in result with separate opinion.

NAJAM, concurs.

---

6. At oral argument, Feuston faulted the State for not notifying his bondsman that he had failed to appear and suggested that the bondsman may have been able to inform the court of his whereabouts. *See* Ind.Code § 27–10–2–12 (requiring the court to issue a warrant for the defendant's arrest if he fails to appear and to order the bail agent to surrender the defendant to court, and requiring the clerk to mail the order to the bail agent within thirty days of the failure to appear). The trial court issued a bench warrant after Feuston failed to appear, and the order bears a certificate of service signed by the clerk and dated May 6, 2009 (the day after Feuston failed to appear), certifying that the order was mailed to the State and Feuston's bondsman. Appellant's App. at 18. Thus, the record reflects that the bondsman was notified, and Feuston presented no evidence to the contrary.

ROBB, Chief Judge, concurring in result with opinion.

Although I agree with the majority that the trial court did not err in denying Feuston's motion for discharge pursuant to Criminal Rule 4(C), I respectfully concur only in the result because I believe the majority's holding is too broad given the fact-sensitive nature of Rule 4(C) inquiries.

The majority concludes that the trial court or prosecutor must have actual notice of the defendant's whereabouts, Op. at 550–51, and even if some other agent of the State—including the agent charged with finding him and bringing him before the trial court pursuant to a bench warrant if he fails to appear in court as ordered—has actual knowledge of the defendant's whereabouts, that knowledge *should not be imputed* to the trial court or prosecutor if they do not have actual knowledge themselves, *id.* at 551. I would not say this is true in every instance. Feuston's failure to appear at a pre-trial conference before any trial date had been set without notice to the State of his whereabouts tolls the Rule 4(C) clock.[7] However, consistent with my position in *Werner,* I believe the issue of notice is extremely fact sensitive, *see* 818 N.E.2d at 32, and if there was indisputable evidence that officials at the Jay County Jail were aware Feuston was incarcerated in the Delaware County Jail during the pendency of his Jay County case and further, indisputable evidence of when they became aware of Feuston's in-

carceration, I would hold that the trial court and the prosecutor were sufficiently notified of Feuston's whereabouts to begin the Rule 4(C) clock running as of that date.

I also disagree with the majority's citation of *Johnson* to support its decision. In addition to the facts the majority acknowledges distinguish *Johnson* from this case, in *Johnson,* there is no question but that *no authorities* in Marion County knew of the defendant's incarceration in Johnson County. Here, there is at least the suggestion that Jay County authorities knew of Feuston's incarceration in Delaware County. I do not believe *Johnson* necessarily lends support to the majority's conclusion that it is the trial court's knowledge and not the sheriff's or some other agent of the State's knowledge that is singularly relevant. *See* Op. at 551–52.

Having made those points, however, I acknowledge that in this case, there is only evidence *suggesting* that the Jay County Jail became aware of Feuston's incarceration in Delaware County in August 2009. It is Feuston's burden on appeal to give us a record that supports his claims.[8] *See Delao v. State,* 940 N.E.2d 849, 852 (Ind. Ct.App.2011) ("On appeal, the defendant carries the burden of presenting a record for sustaining his argument."), *trans. denied.* Because the record does not indisputably show that any Jay County authorities were aware of his incarceration in

---

**7.** Although the trial court could have set a trial date at that time in Feuston's absence and notified him by mail of the setting, I acknowledge that would raise due process issues down the line if he continued to absent himself and proof that he received notice of the trial date setting could not be procured.

**8.** As the majority notes, Delaware County Jail records show Feuston was checked out to attend court in Jay County on August 19, 2009, but the Jay County court records do not

show that he appeared in court on that day. *See* Op. at 551; Appendix of Appellant at 2 (Jay County Superior Court CCS); 45–46 (fax communication from Delaware County Jail). Feuston could have resolved the conflict in the evidence and proven his contention that he appeared in Jay County on that date in a number of ways—by for instance, calling as a witness at the Rule 4(C) hearing the officer who transported him. He failed to do so, and we are therefore left with an unclear record.

Delaware County prior to the return of the warrant on August 17, 2010, and therefore the Rule 4(C) clock was tolled until that date, I concur in the result reached by the majority affirming the trial court's denial of Feuston's motion for discharge.