**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DAVID L. JOLEY**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana



FILED
Sep 24 2012, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TROY MARIE CAIN CORNELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1201-CR-33 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Robert E. Ross, Magistrate
Cause No. 02D04-1009-CM-6021

**September 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following a jury trial, Troy Marie Cain Cornell ("Cain Cornell") appeals her conviction for prostitution[1] as a Class A misdemeanor. She raises two issues that we restate as:

I.    Whether the trial court erred when it denied her motion for discharge pursuant to Indiana Criminal Rule 4(C).

II.   Whether the trial court properly denied Cain Cornell's peremptory challenges to potential jurors after the State posed a *Batson v. Kentucky* challenge to her strikes.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 29, 2010, Detective Darrick Engelman ("Detective Engelman") of the Fort Wayne Police Department, Narcotics and Vice Division, responded to an advertisement placed by Cain Cornell on an "erotic entertainment" website called "Escorts.com." *State's Ex. Vol.*, *Ex. 1*. The two spoke by telephone, and pursuant to Cain Cornell's instructions, Detective Engelman, who was wearing law enforcement audio recording equipment, met Cain Cornell at the Travel Inn in her hotel room. He placed money on the night stand; she began by giving Detective Engelman a back massage on the bed, and four minutes later, she undressed and began engaging in sexual conduct. At that point, Fort Wayne Police entered the room and arrested Cain Cornell.

On September 30, 2010, the State charged Cain Cornell with prostitution as a Class A misdemeanor. A public defender, David LeBeau, was appointed to represent her. Throughout the proceedings, the jury trial was set and rescheduled a number of times. The

---

[1] *See* Ind. Code § 35-45-4-2(1).

2

first trial date set was January 20, 2011. On January 4, Cain Cornell moved for a continuance because depositions of three police officers had been scheduled, but the officers did not appear; one had retired, and two were at a police training exercise. Although counsel for Cain Cornell requested that the delay be charged to the State, the trial court did not rule on the matter. The trial was reset to March 24, 2011.

On March 15, attorney LeBeau withdrew his appearance and public defender Michael Douglass appeared on Cain Cornell's behalf. Cain Cornell expressed displeasure with the public defender situation and suggested she be permitted to represent herself. After dialogue with the trial court, the matter was reset at her request for a status conference in two weeks to permit her time to explore her options. The trial court then ordered Cain Cornell to appear at 7:30 a.m. on March 29, 2011 to meet with her appointed attorney prior to the status conference on that date. *Joint Ex. Vol., Ex.* 2 at 11.

Cain Cornell appeared for the status conference on March 29, but failed to arrive early to meet with her counsel as the trial court had ordered, and the trial court rescheduled the status conference to April 4, 2011. However, on April 5, Cain Cornell's counsel requested that the status conference be continued for four weeks, and the trial court then rescheduled the conference for May 3, 2011. On that date, the trial court set the jury trial for July 28, 2011.

About ten days prior to trial, the State requested a continuance due to newly discovered evidence. The trial court rescheduled the trial, over Cain Cornell's objection, to October 6, 2011. On September 19, the State moved to continue the trial, and over Cain Cornell's objection, the trial court reset trial for January 5, 2012.

3

On November 22, 2011, Cain Cornell moved for discharge pursuant to Indiana Criminal Rule 4(C). Following a hearing, the trial court denied the motion. Prior to the start of trial on January 5, 2012, Cain Cornell renewed her motion for discharge, which the trial court denied.

During jury selection, the first panel of jurors was comprised of three males and three females. Cain Cornell's counsel exercised three peremptory challenges, which would have removed the three women from the panel. The State objected, arguing that the challenges were based on gender and were in violation of *Batson v. Kentucky*.[2] After receiving argument from both attorneys, the trial court found that a *Batson* violation had occurred, and it refused Cain Cornell's request with regard to two of the three jurors that she had attempted to strike. It permitted the peremptory strike of the third potential juror.

At the conclusion of the trial, the jury found Cain Cornell guilty of Class A misdemeanor prostitution. She now appeals.

## DISCUSSION AND DECISION

### I.      Discharge under Trial Rule 4(C)

Cain Cornell argues that the trial court erred when it did not grant her motion(s) for discharge under Indiana Criminal Rule 4(C) because more than three hundred sixty-five days have elapsed since she was arrested and charged. Criminal Rule 4(C), which implements a defendant's constitutional right to a speedy trial, provides in relevant part:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his

---

[2] *Batson v Kentucky*, 476 U.S. 79, 96-98 (1986), *modified by Powers v. Ohio*, 499 U.S. 400 (1991).

arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar.

The rule places the duty to bring the defendant to trial within one year on the State, subject to the listed exceptions, and the defendant has no duty to remind either the State or the trial court concerning the State's duty. *Todisco v. State*, 965 N.E.2d 753, 755 (Ind. Ct. App. 2012), *trans. denied*. When a defendant makes a motion for discharge pursuant to Criminal Rule 4, the burden is on the defendant to show that he has not been timely brought to trial and that the defendant is not responsible for the delay. *Feuston v. State*, 953 N.E.2d 545, 548 (Ind. Ct. App. 2011). If the defendant seeks or acquiesces in a delay, the one-year time limit is extended by the length of such delay. *Todisco*, 965 N.E.2d at 755.

The State suggests that we apply an abuse of discretion standard of review to the trial court's decision to deny Cain Cornell's request. *Appellee's Br*. at 6. We acknowledged in *Todisco* that "the standard of review for Criminal Rule 4(C) appeals has been somewhat unsettled," but held that "disputed findings of fact are entitled to deference, [and] legal conclusions are to be reviewed de novo." *Id*. (citing *Feuston*, 953 N.E.2d at 548). Because the trial court here did not issue findings of fact, we review this issue de novo.[3]

The State charged Cain Cornell on September 30, 2010, so the one-year period began on that date. It is undisputed that trial dates were set and reset multiple times during the

---

[3] We note that, even if we reviewed the trial court's decision to deny Cain Cornell's motion under an abuse of discretion standard, we find no abuse of discretion occurred and, thus, would reach the same result as we do under the de novo review. *See Upshaw v. State*, 934 N.E.2d 178, 182 (Ind. Ct. App. 2010) (finding it was not necessary to resolve which standard of review applied because it would affirm trial court's Criminal Rule 4(C) decision regardless of which standard was used), *trans. denied*.

5

proceedings. Specifically, the following trial dates were scheduled: (1) January 20, 2011; (2) March 24, 2011; (3) July 28, 2011; (4) October 6, 2011; and (5) January 5, 2012. The January 2, 2012 trial occurred 462 days after Cain Cornell was arrested and charged, and thus beyond the one-year parameters of Criminal Rule 4(C). Nevertheless, the record before us reflects no error because, as discussed below, at least 126 of the 462 total days were delays attributable to Cain Cornell.

Initially, we recognize that Cain Cornell claimed before trial, and asserts now, that the delay between January 20, 2011 and March 24, 2011 – which occurred when she asked to continue the case because three subpoenaed police officers did not appear for scheduled depositions – should be attributed to the State. The trial court did not make a ruling on her request. She claims that because the trial court did not issue a ruling, "the record is silent concerning the reason for the delay," and therefore the delay should be attributed to the State. *Caldwell v. State*, 922 N.E.2d 1286, 1289 (Ind. Ct. App. 2010) (when record is silent concerning reason for delay, it is not attributable to defendant), *trans. denied*. Even if we were to agree with Cain Cornell and impose responsibility for that delay upon the State, she was still brought to trial in a timely fashion because the delay between the March 24, 2011 trial setting and the July 28, 2011 trial setting (126 days) is attributable to her, as she requested additional time due to issues with her counsel.

Specifically, the record before us reflects that at the March 15 pre-trial hearing, the trial court released LeBeau as Cain Cornell's counsel,[4] and replacement public defender

---

[4] The record indicates that LeBeau either had already or was going to take a job with the county prosecutor's office.

6

Douglass appeared with Cain Cornell at the pre-trial hearing. Cain Cornell personally spoke on the record, expressed displeasure with the public defender situation, and asked that the charges against her be dismissed. The trial court gave her three options: receive the services of an appointed public defender; hire her own attorney; or represent herself. Because a decision was not being reached, the trial court asked her whether she desired another trial date or whether she wanted to set a status conference in two weeks, in order to give her some time to explore her options regarding representation. She chose the latter, so the matter was set for status conference at 9:00 a.m. on March 29, 2011. The trial court specifically instructed her: "[Y]ou must be in the lobby of this building at 7:30 that morning to meet with the public defender staff." *Joint Ex. Vol., Ex.* 2 at 11. Although Cain Cornell appeared for the status conference on March 29, she did not arrive early and meet with her counsel as the trial court had ordered her to do, and the trial court rescheduled the status conference to April 5, 2011, again ordering her to arrive at 7:30 a.m. to speak to the public defender. *Id.*, *Ex.* 3 at 3. On April 5, Cain Cornell and attorney Douglass appeared, and Douglass requested that the status conference be continued for four weeks, to May 3, 2011, because the case had recently been transferred to him from LeBeau and in order to give Douglass time to meet with Cain Cornell. The trial court then scheduled the status conference for May 3, 2011, at which time the trial court set the jury trial for July 28, 2011.[5] This timeline and series of extensions from the period from the March 24, 2011 trial setting to the July 28, 2011 trial setting, consisting of 126 days, is attributable to Cain Cornell. We acknowledge that her requests for more time

---

[5] Thereafter, all delays through January 5, 2012 were attributable to the State pursuant to its requests for continuances (161 days).

stemmed from changes occurring with personnel at the public defender's office; however, she chose that representation and those delays are not chargeable to the State. *See Hillenburg v. State*, 777 N.E.2d 99, 105 (Ind. Ct. App. 2002) (continuances of trial were chargeable to defendant, even though his requests for continuance claimed they were necessitated by delays in State attaining and processing tissue samples), *trans. denied* (2003).

Although Indiana Criminal Rule 4(C) requires that a defendant be brought to trial in one year, in this case that one-year period was extended by the 126 days attributable to Cain Cornell's delays, such that she had to be brought to trial within 491 days; here, the State brought her to trial within that time period. We discern no trial court error in its denial of her motions for discharge.

## II. *Batson* Challenge

Cain Cornell contends that the trial court erred when, in response to her attempt to peremptorily strike three potential jurors, it determined the strikes were a violation of *Batson v. Kentucky* and therefore rejected her peremptory challenges.

Indiana Code sections 35-37-1-3(c) and 35-37-1-4 provide that in prosecutions for offenses other than murder, parties may use as many as five peremptory challenges to exclude venirepersons from the jury. Generally, a peremptory challenge may be used for no cause whatsoever. *Thompson v. State*, 966 N.E.2d 112, 120 (Ind. Ct. App. 2012), *trans. denied*. However, the use of a peremptory challenge to strike a potential juror solely on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Jeter v. State,* 888 N.E.2d 1257, 1262-63 (Ind. 2008) (citing *Batson,* 476 U.S. 79, 106 S. Ct. 1712), *cert. denied*. In 1994, the United States Supreme

Court extended the principles of *Batson* to preclude gender discrimination as well. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 141-42 (1994); *Koo v. State*, 640 N.E.2d 95, 99 (Ind. Ct. App. 1994), *trans. denied* (1995).

> There are three steps to resolving a *Batson* claim:
>
> First, the party contesting the peremptory challenge must make a prima facie showing of discrimination on the basis of race. Second, after the contesting party makes a prima facie showing of discrimination, the burden shifts to the party exercising its peremptory challenge to present a race-neutral explanation for using the challenge. Third, if a race-neutral explanation is proffered, the trial court must then decide whether the challenger has carried its burden of proving purposeful discrimination.

*Killebrew v. State,* 925 N.E.2d 399, 401 (Ind. Ct. App. 2010), *trans. denied*. As to the third prong – whether counsel's race-neutral explanation for a peremptory challenge should be believed – we have recognized:

> There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the [proponent's] state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'

*Jeter*, 888 N.E.2d at 1264-65 (citations omitted). Therefore, upon appellate review, we accord great deference to a trial court's decision concerning whether a peremptory challenge is discriminatory and will set it aside only if found to be clearly erroneous. *Forrest v. State*, 757 N.E.2d 1003, 1004 (Ind. 2001).

9

Here, during voir dire, Cain Cornell moved to peremptorily strike three potential jurors: those seated in seats numbered 2, 5, and 6.[6] The State objected to the strikes because Cain Cornell's desired strikes would exclude all three females of the six potential jurors in the initial jury panel. On appeal, Cain Cornell concedes that striking all three females constitutes a prima facie showing of discrimination, which permitted the trial court to proceed to the second step of the *Batson* analysis. *Appellant's Br.* at 16. She claims, however, that she provided neutral explanations and that the trial court erred when it determined a *Batson* violation had occurred. The State concedes that Cain Cornell's offered reasons for striking the three jurors were facially neutral, but that the trial court, after making inquiry, properly determined that the reasons were not sincere. *Appellee's Br.* at 13. We review the trial court's decision regarding Cain Cornell's stated justifications for the proposed strikes to determine if any trial court error occurred.[7]

As to the juror seated in seat 5, Cain Cornell's counsel explained to the trial court that the reason the defense wanted to strike that juror was that she indicated she was not comfortable with a defendant not testifying during trial. However, the trial court determined that, while the juror did indicate during voir dire that she would prefer it if the defendant testified so that she could get the whole story, the juror also stated that she would be comfortable with defense counsel's decision to not have Cain Cornell testify. The State

---

[6] We note that the juror panel members each had juror numbers assigned to them; however, it is the seats in which they were sitting, seats 2, 5, and 6, that were the means used to identify them during the jury selection process.

[7] The trial court ultimately struck the juror in seat 2, as at some point the State agreed and also struck her. Thus, we only review the trial court's decision concerning those jurors seated in seats 5 and 6.

10

argued to the trial court that defense counsel posed the same type of question to a male juror, who gave essentially the same type of answer, but Cain Cornell's counsel did not move to strike the male juror, thus evidencing that the facially neutral reason was a pretext for a desire to remove females from the jury.

As to the juror in seat 6, Cain Cornell's counsel explained to the trial court that he wished to strike the juror because she previously sat on a jury that convicted the defendant in that case and because her body language suggested she had a moral opposition to the escort profession. In response, the State objected to the strike and argued that the juror expressed her understanding of the difference between immoral conduct and criminal conduct. In fact, the juror said she "was not there to morally judge defendant and only to judge the law and evidence." *Tr.* at 55-56.

The trial court stated that its own observations were not consistent with those offered by Cain Cornell, and it disagreed with Cain Cornell's assessment of the reactions and answers of the jurors. Before reaching a decision about the peremptory strikes, the trial court engaged in dialogue with the parties to receive argument on the matter and then took a recess to evaluate the issue. Ultimately, the trial court found that a pattern of discrimination existed and denied the use of the peremptory strikes to remove the jurors in seats 5 and 6.

Upon review of the facts and circumstances before us, we find that it was not clearly erroneous for the trial court to conclude that, as part of her trial strategy in defending against prostitution charges, Cain Cornell was intentionally discriminating against female jurors on the basis of their gender. Affirmed.

NAJAM, J., and MAY, J., concur.