# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 04 2016, 8:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joseph W. Eddingfield
Wabash, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bryan N. Myers, | November 4, 2016 |
| *Appellant-Defendant*, | Court of Appeals Case No. 17A04-1510-CR-1688 |
| v. | Appeal from the DeKalb Superior Court |
| State of Indiana, | The Honorable Monte L. Brown, Judge |
| *Appellee-Plaintiff* | Trial Court Cause Nos. 17D02-1406-FA-16, -17 |

**Crone, Judge.**

# Case Summary

Earlier this year, we issued a memorandum decision in *Myers v. State*, No. 17A04-1510-CR-1688 (Ind. Ct. App. Apr. 26, 2016). In that interlocutory appeal, Bryan N. Myers challenged the trial court's denial of his motion for discharge of his four class A felony drug dealing charges pursuant to Rule 4(C) of the Indiana Rules of Criminal Procedure. We held that the trial court erred in summarily denying his motion where both he and the State had requested a hearing. We reversed and remanded for an evidentiary hearing on Myers's motion for discharge. The trial court conducted the hearing and issued an order with findings of fact and conclusions thereon, again denying Myers's motion for discharge. Having retained jurisdiction, we now conduct our review with the aid of the hearing transcript, exhibits, and amended briefs. Concluding that the trial court did not err in denying Myers's motion for discharge, we affirm.

# Facts and Procedural History

In May 2014, Myers was charged in Wabash County with class D felony possession of methamphetamine ("Wabash County Cause"). He was released on bond and was residing at his Pike Street home in Wabash.

On June 4, 2014, the DeKalb County prosecutor charged Myers with four class A felony drug dealing offenses in two separate two-count causes, 17D02-1406-

FA-16 ("Cause 16") and 17D02-1406-FA-17 ("Cause 17").[1] The following day, the DeKalb Superior Court made a probable cause finding and directed that arrest warrants be issued to the DeKalb County sheriff. At 9:00 a.m. on Friday, June 6, 2014, the arrest warrants were issued under both cause numbers. That same day, the warrants were faxed to the Wabash County Sheriff's Department and stamped received at 1:01 p.m. *See* Defendant's Ex. A (arrest warrants on Causes 16 and 17, identifying Myers and his Wabash address, each including file stamp indicating date and time of receipt by DeKalb County sheriff and date of fax receipt by Wabash County sheriff). That same afternoon, with the DeKalb County warrants in hand, Wabash City Police Officer Kevin Evenson detained and arrested Myers shortly after Myers left his Wabash home. After presenting the warrants to Myers, Officer Evenson signed and dated them as having been served on Myers on June 6, 2014. *Id*. The date of return of the arrest warrants was left blank. *Id*.

[7] Myers was jailed in Wabash County over the weekend. On Monday, June 9, 2014, he appeared in court in Wabash County, where his bond was revoked on the Wabash County Cause and he was charged with a new class C felony possession offense. That same day, Auburn City Police Officer Cory Heffelfinger, a drug interdiction officer, went to the Wabash County Jail hoping

---

[1] In both causes, the State charged Myers with class A felony dealing in methamphetamine and class A felony dealing in a controlled substance (heroin). As such, we address them together unless otherwise indicated.

to interview Myers. Auburn is in DeKalb County. Myers refused the interview, and Officer Heffelfinger returned to DeKalb County.

[8] Myers remained incarcerated in Wabash County for the ensuing eleven months. Sometime around May 15, 2015, DeKalb County Prosecutor ClaraMary Winebrenner learned from conversations with law enforcement personnel (including Officer Heffelfinger) that "Myers was incarcerated or arrested on our cases." State's Ex. 3 (Winebrenner's affidavit). On May 19, 2015, Prosecutor Winebrenner filed a motion for an order to transport Myers from Wabash County to DeKalb County, which the trial court granted on May 20, 2015.

[9] On June 8, 2015, Myers was transported from the Wabash County Jail to DeKalb County for an initial hearing on Causes 16 and 17. On June 26, 2015, Myers filed a Rule 4(C) motion for discharge. On July 27, 2015, the State filed its objection to Myers's discharge motion, and both parties requested that the motion be set for hearing. The trial court set dates for pretrial conferences and for a February 2016 trial.

[10] The trial court did not hold an evidentiary hearing on Myers's motion for discharge. On August 7, 2015, the trial court issued an order summarily denying Myers's motion. Thereafter, Myers sought and received certification of the order for interlocutory appeal. The motions panel of this Court granted his petition for interlocutory appeal. We reversed and remanded, finding that the trial court should have held a hearing on Myers's motion for discharge.

On May 23, 2016, the trial court conducted an evidentiary hearing on Myers's motion. Shortly thereafter, the court issued an order with findings of fact and conclusions thereon, denying Myers's motion. Having retained jurisdiction, we now address the merits of Myers's appeal.

## Discussion and Decision

Myers asserts that the trial court erred in denying his motion for discharge pursuant to Criminal Rule 4(C), which states,

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged.

In reviewing a challenge to a trial court's ruling on a Criminal Rule 4 motion for discharge, the standard of review depends upon whether the case involves application of the law to undisputed facts or the trial court's issuance of findings resolving disputed facts. *Austin v. State*, 997 N.E.2d 1027, 1039-40 (Ind. 2013).

We review the former cases de novo and the latter cases using a clearly erroneous standard. *Id.* In reviewing for clear error, we neither reweigh evidence nor determine witness credibility. *Id.* at 1040. Rather, we consider only the probative evidence and reasonable inferences supporting the judgment and reverse only on a showing of clear error, which is error that "leaves us with a definite and firm conviction that a mistake has been made." *Id.* (citation omitted).

[14] The purpose of Criminal Rule 4(C) is to promote early trials, not to discharge defendants. *Fuller v. State*, 995 N.E.2d 661, 665 (Ind. Ct. App. 2013), *trans. denied* (2014). Subject to the exceptions listed in Rule 4(C), the State has an affirmative duty to bring the defendant to trial within one year of being charged or arrested. *Wood v. State*, 999 N.E.2d 1054, 1060 (Ind. Ct. App. 2013), *trans. denied* (2014), *cert. denied*. The defendant is neither obligated to remind the court of the State's duty nor required to take affirmative steps to ensure that he is brought to trial within the statutory time period. *Id.* At the same time, Criminal Rule 4 is not intended to be a mechanism for providing defendants a technical means to escape prosecution. *Austin*, 997 N.E.2d at 1037. When a defendant moves for discharge, he bears the burden of showing that he has not been timely brought to trial and that he is not responsible for the delay. *Wood*, 999 N.E.2d at 1060. Where the record is silent concerning the reason for delay, such delay is not attributable to the defendant. *Caldwell v. State*, 922 N.E.2d 1286, 1290 (Ind. Ct. App. 2010), *trans. denied*.

Here, the trial court's findings of fact and conclusions thereon include the following:

FINDINGS OF FACT

....

11. That the Court was not provided with any evidence that the DeKalb County Sheriff's Department or the DeKalb County Prosecutor's Office was notified by any Wabash County Police Agency that the Defendant had been arrested either on the DeKalb County warrants or on a new Wabash County charge.

12. That on June 9, 2014, Officer Cory Heffelfinger an officer with the Auburn Police Department, a city in DeKalb County, Indiana, attempted to interview the Defendant at the Wabash County Jail, but Defendant refused to speak with Officer Heffelfinger. No evidence was presented to explain how Officer Heffelfinger knew the Defendant was in the Wabash County Jail.

13. That Officer Heffelfinger did not arrest or otherwise transport the Defendant to DeKalb County nor did he notify the DeKalb County Sheriff's Department of the fact that Bryan Myers was being held in the Wabash County Jail or his arrest on new charges in Wabash County or his arrest on the DeKalb County warrants.

14. That between June 9, 2014, and May 15, 2015, it does not appear that any action was taken with regard to either the foregoing DeKalb County cases nor does it appear that any information was received by the DeKalb County Sheriff's Department or the DeKalb County Prosecuting Attorney's Office about the Defendant in association with said cases.

15. That on or about May 15, 2015, in a conversation with DeKalb County Chief Probation Officer, Katherine Cullum, and

Officer Cory Heffelfinger, the DeKalb County Prosecuting Attorney learned that the Defendant might be involved in other drug related activities in the DeKalb County, Indiana, area and that he may be in the Wabash County Jail.

16. That pursuant to [DeKalb County Prosecutor] Winebrenner's Affidavit admitted as State's exhibit 3, a note placed in the Defendant's files memorializing said conversation, stated that the conversation with Officer Heffelfinger occurred on May 15, 2015.

17. That in response to the information received by Prosecutor Winebrenner, she reviewed the Defendant's files, observed that the Defendant had not had his initial hearing on the DeKalb County charges, and on May 19, 2015, filed her Motion for a Transportation Order in the pending DeKalb County cases.

….

19. That Prosecutor Winebrenner's Affidavit states that no formal notice was ever given to the prosecutor that the Defendant was incarcerated or that he had been arrested on the charges filed in DeKalb County, rather, said information was generally learned from conversations with Probation Officer Cullum and Officer Heffelfinger on or about May 15, 2015.

CONCLUSIONS OF LAW

….

7. That following the Defendant's arrest on June 6, 2014, Wabash City Police Officer Kevin Evenson then partially completed the Sheriff's Return at the bottom of the arrest warrants issued by the Clerk of DeKalb County.

8. That no evidence was presented that Officer Evenson ever

provided a copy of said returns either to the DeKalb County Sheriff's Department, the DeKalb County Prosecuting Attorney, DeKalb Superior Court II, or the Clerk thereof.

9.  That prior to May 15, 2015, Officer Cory Heffelfinger never informed the DeKalb County Sheriff's Department, the DeKalb County Prosecuting Attorney, DeKalb Superior Court II, or the Clerk thereof, of the Defendant's incarceration in Wabash County, Indiana.

10.  That subsequent to June 6, 2014, the first occasion the DeKalb County Prosecuting Attorney learned the Defendant might be in jail in Wabash County, Indiana, was May 15, 2015, when that information was relayed to her by Officer Cory Heffelfinger.

11.  That after receiving information from Officer Cory Heffelfinger on May 15, 2015, that the Defendant might be in jail in Wabash County, Indiana, on May 19, 2015, 4 days later, Prosecutor Winebrenner filed her Motion For An Order Of Transportation from Wabash County to DeKalb County for the purpose of conducting an initial hearing on the pending DeKalb County charges.

12.  That following the Court's Order of June 5, 2014, where the Court found probable cause for the arrest of the Defendant in [Causes 16 and 17], the Court first learned of the Defendant's possible whereabouts on May 20, 2016 [sic], when the Court signed the Order that Defendant be transported from Wabash County to DeKalb County for initial hearing.

13.  That on June 8, 2015, Initial Hearing was held in DeKalb Superior Court II at which time the Defendant appeared pro se, which is the first date that DeKalb Superior Court II positively knew of the whereabouts of the Defendant following its Order of June 5, 2014.

14. That between June 5, 2014, and May 15, 2015, Defendant failed to present any evidence that the DeKalb County Prosecuting Attorney, the DeKalb County Sheriff's Department, or the DeKalb Superior Court II knew of the Defendant's whereabouts or otherwise had reason to know of the Defendant's whereabouts.

15. That the fact the DeKalb County Prosecutor's Office knew in June of 2014 that the Defendant was a Wabash county resident did not put that office or the DeKalb County Sheriff's Department on notice of the Defendant's specific whereabouts, especially considering the fact that the return of the warrants faxed to Wabash County on June 6, 2014, were not filed in DeKalb County until well after May 15, 2015. Based on the record, neither the DeKalb County Prosecutor's Office nor the DeKalb County Sheriff's Department had actual notice of the Defendant's whereabouts until at least May 15, 2015.

16. That during the period of June 5, 2014, through May 15, 2015, the Defendant failed to provide the Prosecuting Attorney of DeKalb County, the DeKalb County Sheriff's Department, or the DeKalb Superior Court II with any written notice of his whereabouts.

17. That based on the foregoing findings and conclusions, the Court finds that the clock for Criminal Rule 4 purposes did not begin to run until May 15, 2015.

Supp. App. at 30-32, 36-39 (citations omitted).

[16] Myers maintains that the Rule 4 clock should have begun to run on June 6, 2014, the date when he was arrested in Wabash County and presented with the DeKalb County warrants. He relies on *Caldwell*, 922 N.E.2d at 1287-88, in which another panel of this Court reversed the denial of the defendant's motion

for discharge.  There, the defendant had been released on recognizance after his arrest for operating while intoxicated.  *Id*. at 1288. A few days later, the State filed a multiple-count information against him, but the clerk of the court did not send the warrant to the county sheriff for execution.  *Id*.  Eighteen months later, the State requested an initial hearing and summons for Caldwell to appear.  *Id*.  Again, the clerk of the court failed to forward the summons to the sheriff for service.  *Id*.  When the defendant heard that his name was on the docket, he voluntarily appeared in court and subsequently moved for discharge.  *Id*.  We find *Caldwell* distinguishable in that there all of the events took place in a single county.  Here, however, two counties were involved, and the record shows a lack of awareness by the DeKalb County authorities that an arrest had been made in Wabash County on their warrants.

[17]  We find this case to be more factually similar to *Feuston v. State*, in which we affirmed the trial court's denial of the defendant's motion for discharge.  953 N.E.2d 545, 551 (Ind. Ct. App. 2011).[2]  There, the defendant had been arrested in Jay County on a theft charge.  He was released on bond and failed to appear for his pretrial conference.  Five months after his arrest in Jay County, he was arrested and jailed in Delaware County on a burglary charge.  Nearly eighteen months after his Jay County arrest, he filed a motion for discharge, claiming that upon his arrival at the Delaware County Jail, a jail employee had read him

---

[2]  In *Austin*, 997 N.E.2d at 1038-39, our supreme court declined to follow *Feuston* on the issue of the appropriate standard of review in Criminal Rule 4 cases.

the warrant from Jay County, which constituted a "hold" based on those charges, and that because one year had passed since then, he was entitled to discharge under Rule 4(C). *Id*. at 546. Emphasizing that the trial court and prosecutor alone bear the responsibility of bringing a defendant to trial in a timely manner, we held that Feuston was not entitled to discharge because he failed to meet his burden of demonstrating that the Jay County trial court and prosecutor had actual knowledge of his whereabouts during the time that he was incarcerated in Delaware County. *Id*. at 553. Even though certain fax communications indicated that employees from the Jay County Jail were aware of Feuston's incarceration in Delaware County, we concluded that "the knowledge of a police or correctional officer should not be imputed to the trial court or prosecutor." *Id*. at 551.

[18] Myers argues that *Feuston* is distinguishable because there the defendant had unclean hands due to his failure to appear for his pretrial conference. *Id*. at 552. While this is certainly a factual distinction, it is not dispositive. In both cases, the prosecutor and the trial court were unaware of the defendant's incarceration in the second county. To the extent that Myers equates the prosecutor's and the trial court's lack of awareness of his whereabouts with a silence in the record that cannot be attributed to him, we disagree.

[19] As the movant, Myers had the burden of demonstrating that he was not brought to trial within the time limits of Rule 4(C) and therefore was entitled to discharge. Yet, he failed to call witnesses to controvert Prosecutor Winebrenner's averments in her affidavit that she lacked knowledge of his

whereabouts.[3] For example, he did not call any personnel from Wabash County to ask why the warrants were not returned to DeKalb County. Nor did he call Officer Evenson to clarify why the warrants were incomplete, improperly filled out, and not returned to DeKalb County and to ask whether he attempted to notify the DeKalb County prosecutor or trial court concerning his detention and arrest of Myers. Nor did he call Officer Heffelfinger to testify as to how he became aware of Myers's incarceration in the Wabash County Jail when he attempted to interview him and to determine whether the officer was aware of the DeKalb County warrants or had simply heard about Myers's detention and pending revocation of his bond in the original Wabash County Cause. We simply do not know how Officer Heffelfinger knew to find Myers in the Wabash County Jail or why he did not attempt to return Myers to DeKalb County.

[20] What we do know is that the trial court found that the DeKalb County prosecutor did not become aware that Myers had been arrested on their warrants until May 15, 2015, and that the court attested to its own lack of awareness of Myers's whereabouts between June 2014 and May 2015. In other

_____

[3] We acknowledge the very recent decision in *Arion v. State*, 56 N.E.3d 71, 72 (Ind. Ct. App. 2016), in which another panel of this Court reversed the trial court's denial of the defendant's motion for discharge where the defendant was incarcerated in Miami County on prior convictions. The *Arion* court emphasized that the law enforcement officer's failure to return a warrant to the Carroll County trial court after serving it on the incarcerated defendant did not absolve the State of its responsibility to bring the defendant to trial in a timely manner. *Id.* *Arion* is factually distinguishable in that there, "[b]oth the State and the trial court were well aware of Arion's whereabouts[.]" *Id*. at 75. Here, the DeKalb County prosecutor and trial court did not know Myers's whereabouts, and we consider Wabash County law enforcement's failure to return the warrants to DeKalb County only to the extent that the unreturned warrants have implications concerning the lack of awareness of Myers's arrest.

words, as between Myers, the trial court, and the DeKalb County prosecutor, Myers was the only one who knew that he had been arrested on the DeKalb County warrants. To the extent that Myers argues that DeKalb County authorities should have known his whereabouts based on his address in the city of Wabash, thus equating knowledge of a person's residence in a county with knowledge that the person is housed in that county's jail, he invites us to reweigh evidence, which we may not and will not do.

[21] In sum, Myers has failed to provide us with a record that indisputably shows that the DeKalb County prosecutor and/or the trial court became aware of his incarceration before May 15, 2015. As such, he has failed to meet his burden of demonstrating that the trial court clearly erred in denying his motion for discharge. Accordingly, we affirm.

[22] Affirmed.

Najam, J., and Robb, J., concur.